IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

———————————

EXELIXIS, INC.,

Plaintiff-Appellee,

v.

Teresa Stanek Rea, ACTING DIRECTOR,
UNITED STATES PATENT AND TRADEMARK OFFICE,

Defendant-Appellant.

———————————

Appeal from the United States District Court for the Eastern District of
Virginia in case no. 12-CV-0096, Judge T. S. Ellis, III.

———————————

BRIEF FOR THE ACTING DIRECTOR OF THE UNITED STATES PATENT
AND TRADEMARK OFFICE

———————————

*Of Counsel:*

BERNARD J. KNIGHT, JR.
  *General Counsel*

NATHAN K. KELLEY
  *Deputy Solicitor*

BRIAN T. RACILLA
MONICA B. LATEEF
  *Associate Solicitors*
  *Office of the Solicitor – Mail Stop 8*
  *U.S. Patent and Trademark Office*
  *P.O. Box 1450*
  *Alexandria, Virginia  22313-1450*

STUART F. DELERY
  *Acting Assistant Attorney*
  *General*

NEIL H. MACBRIDE
  *United States Attorney*

SCOTT R. MCINTOSH
DANA KAERSVANG
  *(202) 307-1294*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7216*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES

STATEMENT OF JURISDICTION .................................................................1

STATEMENT OF THE ISSUE ......................................................................2

STATEMENT OF THE CASE .......................................................................3

STATEMENT OF FACTS .............................................................................5

     A.    STATUTORY BACKGROUND .................................................5

     B.    FACTUAL BACKGROUND ......................................................8

     C.    PRIOR PROCEEDINGS .........................................................10

SUMMARY OF ARGUMENT ....................................................................15

STANDARD OF REVIEW ..........................................................................17

ARGUMENT .............................................................................................17

    PTO HAS REASONABLY CONSTRUED SECTION 154(b)(1)(B)
    TO EXCLUDE ALL RCE DELAY FROM PATENT TERM
    ADJUSTMENTS, REGARDLESS OF WHEN THE RCE IS FILED .........17

     A.    Section 154(b)(1)(B) provides for patent term adjustments
         for delays "due to the failure of" the USPTO ....................................17

     B.    The USPTO's interpretation is consistent with the language,
         structure, and underlying policy of the patent term adjustment
         provisions .........................................................................................19

     C.    The *Exelixis I* district court did not convincingly address the
         implications of its ruling ..................................................................27

D.    The USPTO's consistent interpretation of this provision is entitled to deference ............................................................32

CONCLUSION ........................................................................................35

CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                **Page**

*Abbott Laboratories v. Kappos*,
    No. 12-1499 (E.D. Va. Dec. 27, 2012)....................................................27

*Ariad Pharmaceuticals, Inc. v. Rea*,
    No. 12-0886 (E.D. Va. Aug. 9, 2012) ...................................................26

*Cathedral Candle Co. v. U.S. Intern. Trade Com'n*,
    400 F.3d 1352 (Fed. Cir. 2005) ...........................................................32

*Exelixis v. Kappos*,
    __ F. Supp. 2d __,  2012 WL 5398876 (2012)............................................ passim

*Exelixis v. Kappos*,
    __ F. Supp. 2d __,  2013 WL 314754 (2013)............................................. passim

*Novartis AG v. Rea*,
    Nos. 13-1160, 13-1179 (Fed. Cir) ........................................................25

*Novartis AG v. Kappos*,
    __ F. Supp. 2d __, 2012 WL 5564736 (Nov. 15, 2012),
    *appeal pending*, Nos. 2013-1160, 2013-1179 (Fed. Cir.) ...................................33

*Oncothyreon Inc. v. Kappos*,
    No. 12-1404 (E.D. Va. Dec. 6, 2012)....................................................27

*Rubie's Costume Co. v. United States*,
    337 F.3d 1350 (Fed. Cir. 2003) ...........................................................33

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) ......................................................................32

*Star Fruits S.N.C. v. United States*,
    393 F.3d 1277 (Fed. Cir. 2005) ...........................................................17

*Timex V.I., Inc. v. United States,*,
  157 F.3d 870 (Fed. Cir. 1998) .............................................................14

*University of Iowa Research Foundation v. Kappos*,
  No. 12-1444 (E.D. Va. Dec. 14, 2012).................................................27

*Wyeth v. Kappos*,
  591 F.3d 1364 (Fed. Cir. 2010) ............................................... 7, 12, 34

**Statutes:**

5 U.S.C. §§ 701-706............................................................................1

28 U.S.C. § 1295(a)(4)(C) ...................................................................2

28 U.S.C. § 1331 ..................................................................................1

28 U.S.C. § 1338(a) .............................................................................1

28 U.S.C. § 1361 ..................................................................................1

28 U.S.C. § 2201 ..................................................................................1

28 U.S.C. § 2202..................................................................................1

35 U.S.C. § 111 ....................................................................................5

35 U.S.C. § 112 ....................................................................................9

35 U.S.C. § 120 ....................................................................................5

35 U.S.C. § 131 ....................................................................................5

35 U.S.C. § 132 ....................................................................................8

35 U.S.C. § 132(a) ...............................................................................5

35 U.S.C. § 132(b) ....................................................................... 5, 33

35 U.S.C. § 134 ..........................................................................................5

35 U.S.C. § 151 ..........................................................................................6

35 U.S.C. § 154 .................................................................................. 16, 31

35 U.S.C. § 154(b) ............................................................. 1, 2, 6, 11, 21

35 U.S.C. § 154(b)(1)(A) .......................................................................6, 9

35 U.S.C. § 154(b)(1)(B) ............................................................... passim

35 U.S.C. § 154(b)(1)(B)(i) ..................................................................2, 3

35 U.S.C. § 154(b)(1)(B)(ii) ............................................................ 21, 26

35 U.S.C. § 154(b)(1)(B)(iii) ...................................................................21

35 U.S.C. § 154(b)(1)(C) .........................................................................6

35 U.S.C. § 154(b)(1)(C)(iii) ...................................................................21

35 U.S.C. § 154(b)(2)(A) .................................................................. 7, 21

35 U.S.C. § 154(b)(2)(C) ................................................. 7, 9, 12, 22, 30

35 U.S.C. § 154(b)(2)(C)(ii) ...................................................................28

35 U.S.C. § 154(b)(2)(C)(iii) ...................................................................33

35 U.S.C. § 154(b)(3)(A) .................................................................. 7, 33

Pub. L. No. 103-465, 108 Stat. 4809 (1994) ..........................................24

## Regulations:

37 C.F.R. § 1.113(a)-(b)................................................................5

37 C.F.R. § 1.114................................................................25

37 C.F.R. § 1.114(a)(2)................................................................28

37 C.F.R. § 1.114(c)................................................................6

37 C.F.R. § 1.134................................................................28

37 C.F.R. § 1.135................................................................28

37 C.F.R. § 1.314................................................................6

37 C.F.R. § 1.701 *et seq*................................................................7

37 C.F.R. § 1.702................................................................33

37 C.F.R. § 1.703................................................................ 14, 15

37 C.F.R. § 1.703(b) ................................................................ 7, 9, 18

37 C.F.R. § 1.703(b)(1)................................................................4

37 C.F.R. § 1.704................................................................ 12, 22, 30

65 Fed. Reg. 56366-01 (Sept. 18, 2000) ................................................................31

## Legislative Materials:

H.R. Rep. No. 105-39 (1997)................................................................23

H.R. Rep. No. 106-287 (1999)................................................................25

H.R. Rep. No. 106-464 (1999)................................................................13

S. Rep. No. 105-42 (1997) ................................................................ 23, 24

**Other Authorities:**

District court finds RCE's have no impact on PTA accrual if filed more
   than three years after the us filing date, *available at*
   http://www.mwzb.com/news.php (last viewed 1/17/2013)................................27

Steven I. Weisburd & Paul C. Maier, *Exelixis, Inc. v. Kappos*: District
   Court Overturns USPTO Calculation of Patent Term Adjustment
   (Nov. 19, 2012), *available at* http://www.dicksteinshapiro.com/resources
   /alerts/detail.aspx?publication=2234 (last viewed 1/17/2013)...........................26

## STATEMENT OF RELATED CASES

No other appeal in or from the present civil action has previously been before this or any other appellate court.  The issue presented in this case is also presented another case involving the same parties, *Exelixis v. Rea*, No. 2013-1198 (Fed. Cir.).  On February 22, 2013, the parties filed a joint motion to consolidate these cases.  *See Exelixis v. Rea*, No. 2013-1175, Doc. No. 12 (February 22, 2013); *Exelixis v. Rea*, No. 2013-1198, Doc. No. 10 (February 22, 2013).  The same issue is also presented in *Novartis AG v. Rea*, Nos. 2013-1160, 2013-1179 (Fed. Cir). There are multiple cases also raising this issue currently pending in the District Court for the Eastern District of Virginia and the District Court for the District of Columbia.

2013-1175

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

—————————————

EXELIXIS, INC.,

Plaintiff-Appellee,

v.

Teresa Stanek Rea, ACTING DIRECTOR,
UNITED STATES PATENT AND TRADEMARK OFFICE,

Defendant-Appellant.

—————————————

Appeal from the United States District Court for the Eastern District of
Virginia in case no. 12-CV-0096, Judge T. S. Ellis, III.

—————————————

BRIEF FOR THE ACTING DIRECTOR OF THE UNITED STATES PATENT
AND TRADEMARK OFFICE

—————————————

## STATEMENT OF JURISDICTION

This case involves challenges to patent term adjustment determinations by

the Director of the United States Patent and Trademark Office ("USPTO") under

35 U.S.C. § 154(b). Exelixis invoked the jurisdiction of the district court under 28

U.S.C. §§ 1331, 1338(a), 1361, 2201, 2202; 35 U.S.C. § 154(b); and 5 U.S.C. §§

701-706. The district court entered final judgment for Exelixis in *Exelixis v.*

*Kappos*, No. 12-0096 (*Exelixis I*) on November 1, 2012. Joint Appendix ("JA")

23.  The government filed a timely notice of appeal on December 31, 2012.  The

district court entered final judgment for the Director in *Exelixis v. Kappos*, No. 12-

0574 (*Exelixis II*) on January 28, 2013.  JA 52.  Exelixis filed a timely notice of

appeal on February 6, 2013.  This Court has appellate jurisdiction under 28 U.S.C.

§ 1295(a)(4)(C).

## STATEMENT OF THE ISSUE

Section 154(b) of the Patent Act provides for the adjustment of patent terms

based on certain categories of delay attributed to the USPTO and the patent

applicant.  35 U.S.C. § 154(b).  Under subsection 154(b)(1)(B), if the USPTO fails

to issue a patent "within 3 years after the actual filing date of the application . . . ,

not including . . . any time consumed by continued examination of the application

requested by the applicant under section 132(b) . . . [,] the term of the patent shall

be extended 1 day for each day after the end of that 3-year period until the patent is

issued."  35 U.S.C. § 154(b)(1)(B)(i).  The issue in this case is whether this Court

should uphold the USPTO's longstanding practice of excluding any time

consumed by an applicant's request for continued examination ("RCE") from the

calculation of patent term adjustment under subsection 154(b)(1)(B) regardless of

when the applicant filed the RCE.

## STATEMENT OF THE CASE

Section 154(b) of Title 35 of the United States Code requires the USPTO to adjust patent terms to compensate patent applicants for several specified types of administrative delay. In particular, as relevant here, when the issuance of the patent is delayed "due to the failure of" the USPTO to issue the patent within three years of the application date, the patent term is extended by one day for each day of delay beyond the three-year deadline. *Id*. § 154(b)(1)(B). However, the statute provides that certain types of delay, including time consumed by a request for continued examination, are to be excluded from this calculation.

In both *Exelixis I* and *Exelixis II*, the USPTO issued a final notice of rejection of the patent application, but ultimately granted the application after Exelixis filed a request for continued examination ("RCE") with new and amended claims. Both the final rejections and the subsequent RCEs were filed more than three years after the application filing date.

When the USPTO ultimately issued the patents, it adjusted the terms of the patents under Section 154(b), providing for additional time due to the failure of the USPTO to issue the patent within three years of the applications' respective filing dates. However, pursuant to 35 U.S.C. § 154(b)(1)(B)(i), the USPTO excluded the time consumed by the RCEs from the length of the patent term adjustments ("PTA"). Thus, in each case, the USPTO granted one day of PTA under

3

subsection 154(b)(1)(B) for each day that elapsed between end of the three-year period and the filing of the first RCE.  In so doing, the USPTO relied on its longstanding interpretation of the provision, promulgated through notice and comment rulemaking, under which RCE time is excluded from PTA calculations under subsection 154(b)(1)(B) regardless of when the RCE is filed.  *See* 37 C.F.R. § 1.703(b)(1).

In each case, Exelixis filed suit in the district court, contending that the USPTO's interpretation of 35 U.S.C. § 154(b)(1)(B) was erroneous and the delay associated with Exelixis's RCEs should be disregarded in computing the amount of PTA.  Both parties filed cross-motions for summary judgment in each case.  The district court in *Exelixis I* adopted Exelixis's interpretation of the statute, holding that the agency's interpretation was foreclosed by what the court characterized as the "plain language" of the statute.  *Exelixis v. Kappos*, __ F. Supp. 2d __,  2012 WL 5398876 (2012) (JA 11-13, 15).  The USPTO appealed.  The district court in *Exelixis II* entered judgment for the government, finding that the statutory text does not address the effect of RCEs filed after the three-year deadline and that the USPTO's interpretation of the statute is reasonable and avoids "absurd results." *Exelixis v. Kappos*, __ F. Supp. 2d __,  2013 WL 314754  (2013) (JA 15-16). Exelixis appealed.  On February 22, 2013, the parties jointly moved to consolidate

the cases. *Exelixis I*, No. 13-1175, Doc. No. 12 (February 22, 2013); *Exelixis II*,

No. 13-1198, Doc. No. 10 (February 22, 2013).

## STATEMENT OF FACTS

### A.  STATUTORY BACKGROUND

When an inventor files a patent application, the USPTO examines the

application and determines whether it can be granted.  35 U.S.C. §§ 111, 131.  If

the USPTO determines that the application cannot be granted, the USPTO issues a

rejection explaining the reasons it could not be granted.  *Id.* § 132(a).  In response,

the applicant may amend the claims or otherwise respond to the rejection.  *Ibid.*  If,

on a second examination, the USPTO determines that the application still does not

meet the statutory requirements, the USPTO can issue a final rejection.  37 C.F.R.

§ 1.113(a)-(b).

After prosecution is closed on the initial application—whether through a

final rejection or a notice of allowance—an applicant has a number of ways to

respond.  The applicant may appeal a final rejection of its claims to the Patent Trial

and Appeal Board.  35 U.S.C. § 134.  Alternatively, the applicant may reopen

prosecution and continue with the examination of its application.  Historically, this

was done with a "continuation" application filed under 35 U.S.C. § 120.  In 1999,

Congress provided an additional mechanism to do this—namely, the request for

continued examination under 35 U.S.C. § 132(b).  An RCE allows an applicant to

file "an information disclosure statement, an amendment to the written description, claims, or drawings, new arguments, or new evidence in support of patentability." 37 C.F.R. § 1.114(c). There is no limit on the number of RCEs an applicant can file.

If at any point during examination, the USPTO determines that an applicant's claims are patentable, the USPTO issues a notice of allowance. 35 U.S.C. § 151; 37 C.F.R. § 1.314. When the USPTO later issues the patent, it also calculates the amount of the patent term adjustment. Although the default term is 20 years from the filing date of an application, the Patent Act provides for the USPTO to adjust the length of the patent term when the issuance of the patent was subject to specified delays. 35 U.S.C. § 154(b).

Section 154(b)(1) specifies three categories of delay that qualify for a PTA, each of which is commonly referred to by the applicable subsection of the statute. "A delay" involves a failure of the USPTO to respond to certain events or filings by enumerated examination deadlines. *See* 35 U.S.C. § 154(b)(1)(A). "B delay," which is the type of delay at issue in this suit, involves a failure of the USPTO to issue the patent within three years. *See id.* § 154(b)(1)(B). "C delay" involves delays due to interferences, secrecy orders, and appeals under certain circumstances. *See id.* § 154(b)(1)(C). For each day of delay caused by failure to meet the requirements of these subsections, the term of the patent is extended by

one day.  The amount of PTA is then reduced by the period of time during which the applicant failed to engage in reasonable efforts to prosecute the application, generally known as "applicant delay."  *Id.* § 154(b)(2)(C).  Overlapping periods of delay are also subtracted to avoid double-counting and to ensure that the amount of PTA does not "exceed the actual number of days the issuance of the patent was delayed."  *Id.* § 154(b)(2)(A); *Wyeth v. Kappos*, 591 F.3d 1364 (Fed. Cir. 2010).

Acting pursuant to specific statutory authorization, the USPTO enacted regulations in 2000 setting forth the process for making PTA calculations through notice and comment rulemaking.  *See* 35 U.S.C. § 154(b)(3)(A); 37 C.F.R. § 1.701 *et seq*.  As to B delay, the USPTO calculates the amount of time that the patent application was pending beyond three years and subtracts "any time" consumed by RCEs and other proceedings "not includ[ed]" under the statute.  *See* 35 U.S.C. § 154(b)(1)(B); 37 C.F.R. § 1.703(b).  The USPTO then adjusts the patent term by the number of days resulting from this B-delay calculation.  For example, if a patent was granted five years after its filing date, the USPTO would ordinarily add two years of time to the patent's PTA total.  But if the applicant filed an RCE four years after the filing date, the USPTO would exclude one year of RCE time from the B-delay total because of the one-year pendency of the RCE and end up with one year of B-delay time.  Alternatively, if the applicant filed its RCE two years after the filing date, the USPTO would exclude the RCE time from the B-delay

total and end up with zero days of B-delay time. The USPTO's interpretation of Section 154(b)(1)(B) treats the "time consumed by continued examination of the application" consistently in all cases, regardless of whether the applicant files the RCE more than or less than three years after the filing date of the application.

## B. FACTUAL BACKGROUND

Exelixis filed patent applications relating to compounds that inhibit or regulate enzymes associated with certain cancers. JA 2 (*Exelixis I,* 2); JA 29 (*Exelixis II,* 6).

The application for the patent at issue in *Exelixis I,* United States Patent No. 7,989,622 (the '622 patent), was filed on January 15, 2008, and contained 31 claims. JA 2, 579. The USPTO issued a non-final notice of rejection under 35 U.S.C. § 132 on February 22, 2010, followed by a final rejection on March 9, 2011. JA 2-3. On April 11, 2011, more than three years after the filing of the original application, Exelixis filed an RCE, cancelling all but two of the pending claims and adding five new claims. JA 2-3, 655-59. After further examination of the RCE, the USPTO determined that a patent should be granted. The patent issued on August 2, 2011. JA 4.

When it issued the '622 patent, the USPTO extended the length of the patent term by 368 days. JA 572. The USPTO calculated this amount by (1) adding time for the USPTO's failure to issue the first notice under 35 U.S.C. § 132 within 14

months of filing, as required under 35 U.S.C. § 154(b)(1)(A) ("A delay"), and time for the USPTO's failure to issue the patent within three years of filing, as required by 35 U.S.C. § 154(b)(1)(B) ("B delay"), and (2) subtracting time for delays attributable to Exelixis ("applicant delay") under 35 U.S.C. § 154(b)(2)(C). JA 4. Pursuant to 37 C.F.R. § 1.703(b), the USPTO excluded from the B-delay period the time after the RCE was filed. JA 4.

The application for the patent at issue in *Exelixis II*, U.S. Patent No. 8,067,436 (the '436 patent), was filed May 24, 2007. JA 30, 820. It contained 54 independent claims and 16 dependent claims. JA 30. Over the course of the next two years, Exelixis submitted four "preliminary amendments," each of which amended or cancelled all of the original claims and proposed dozens of new claims. JA 30, 821-22. On July 20, 2010, more than three years after the application was filed, the USPTO issued a non-final notice of rejection that rejected certain claims for lack of enablement under 35 U.S.C. § 112. JA 31, 825. Exelixis responded in November 2010 by once again cancelling or amending almost all of its claims and adding 16 new claims. JA 32, 865-68. The USPTO issued a final notice of rejection on December 23, 2010, reiterating several of the reasons from its first notice of rejection and again expressing dissatisfaction with the lack of enablement and breadth of Exelixis's claims. JA 32, 877-78. Three months later, Exelixis filed an amended application, but in June 2011, the USPTO

advised Exelixis that its amendments still failed to provide adequate support for its claims. JA 32-33, 885-86.

On June 23, 2011, Exelixis filed an RCE which narrowed the claims to four and responded to the USPTO's enablement rejection. JA 33, 892. Eight days later, on July 1, 2011, the USPTO issued a notice of allowance. JA 33, 896. The '436 patent issued on November 29, 2011. JA 34. When it issued the '436 patent, the USPTO extended the length of the patent term by 949 days. JA 913. The USPTO calculated this amount of PTA by adding 726 days of A delay and 394 days of B delay and subtracting 114 days of applicant delay and 57 days of overlapping delays. JA 820.

## C. PRIOR PROCEEDINGS

Exelixis filed these suits challenging the calculation of B delay for both patents.[1] Specifically, Exelixis challenged the USPTO's decision to exclude the time between the filing of the RCE and the issuance of the patent from the total amount of B delay. The parties filed cross motions for summary judgment in both cases.

**1.** In *Exelixis I,* the district court granted summary judgment to Exelixis. In the view of the district court, the statute requires the USPTO to first calculate

---

[1] Exelixis does not dispute the calculation of the amounts of A delay and applicant delay.

whether three years have elapsed. JA 11. In performing this calculation, the USPTO should exclude the events listed in 35 U.S.C. § 154(b)(1)(B), including any RCE time. *Ibid.* However, if three years have elapsed, the district court held that the USPTO is required to grant "a day for day addition to the PTA for every day beyond the end of the three year clock until the patent issues" with no subtraction of the RCE time (or of time consumed by the other events listed in 35 U.S.C. § 154(b)(1)(B)). JA 21. The district court viewed this interpretation as realizing the "goal of this subparagraph" to provide a "'[g]uarantee of no more than 3-year application pendency,'" regardless of the duration or number of RCE filings after three years. JA 11 (quoting 35 U.S.C. § 154(b)).

Although it acknowledged that, under its construction of the statute, the patent term adjustment "does not address the filing of an RCE *after* the expiration of the three year clock," the district court held that including this RCE time in the PTA "is commanded by the provision's plain and unambiguous language." JA 12. The district court held that the USPTO's interpretation, which requires excluding RCE time from the B-delay PTA totals regardless of when the RCE was filed, requires a "re-writing" of the statute. JA 14. Because it found that the statute was clear, the district court declined to give *Skidmore* deference to the USPTO's interpretation. JA 15.

The district court also reasoned that the USPTO's interpretation was inconsistent with the purpose of the statute because it would "punish the applicant for filing the RCE." JA 13. The district court held that this would be inappropriate because an RCE is a "'valuable tool in the patent prosecution process.'" *Ibid.* (citation omitted). The district court also relied on the fact that RCE time is not listed in the category of applicant delay set out in 35 U.S.C. § 154(b)(2)(C) and 37 C.F.R. § 1.704. JA 12-13.

The district court acknowledged that, under its interpretation, applicants may receive widely varying PTAs depending on whether they filed RCEs before or after the expiration of the 3-year period. However, in the view of the district court, "such disparities arise only at the margins," JA 15, and it is not for the court to correct "'statutory inequities,'" JA 16 (quoting *Wyeth*, 591 F.3d at 1370). The district court reasoned that the USPTO could avoid this problem by "aim[ing] to issue any notice of rejection before the expiration of the three year period and then, by regulation, requir[ing] applicants to file RCE's in response to such notices within 30 days." JA 15.

The district court itself calculated the amount of PTA permitted based on its interpretation, rather than remanding to allow the USPTO to calculate PTA in the first instance. JA 16.

**2.** The *Exelixis II* district court reached the opposite conclusion. It held that "a reasonable interpretation of the statute and its legislative history support the conclusion that there is no reason to treat RCEs differently based upon when they were filed." JA 39. The district court reasoned that the legislative history indicated "an applicant should not be penalized by delay attributable to the PTO, but should also not benefit when the delay was 'requested by' or otherwise attributable to the applicant." JA 41 (quoting 35 U.S.C. § 154(b)(1)(B)). The conference report "unequivocally states" that RCE time "'*shall not* be considered a delay by the USPTO.'" JA 41 (emphasis in original) (quoting H.R. Rep. No. 106-464, at 126 (1999)).

The district court reasoned that the statutory balance between the USPTO delay and applicant delay was "at least partly motivated by fear of so-called 'submarine' patents." JA 42. Submarine applicants "keep[] their applications 'pending and secret until an industry with substantial investment in the technology can be targeted in an infringement suit'" by "indefinitely delay[ing] the PTO's completion of its examination." *Ibid.* RCEs could be used to create submarine patents because "there is currently no limit on the number of times an applicant is permitted to file an RCE to raise 'new arguments' or 'new evidence' after a final notice of rejection has been issued." JA 43. The court reasoned that, if RCE time were included in PTA, the RCE would "create[] the potential for the very abuses

that spurred reform of the laws on patent terms in the first place." JA 44. In the view of the district court, this potential was "underscored by the facts of this litigation." JA 46. The district court explained that "[h]ad Exelixis initially filed a narrowly-tailored application, rather than seeking an overly-broad patent, the extended examination would not have been necessary." JA 47.

The district court accordingly deferred to the USPTO's interpretation as set forth in its regulation. JA 39. The district court reasoned that "[t]o strike the regulation would imply that Congress created a paradox whereby earlier-filed RCEs would indefinitely postpone B-delay PTA as if they were applicant-caused delay, but later-filed RCEs would suddenly be treated like PTO-caused delay and arbitrarily result in accruing PTA." JA 44. In the view of the district court the statute should be interpreted to avoid such "'absurd results.'" JA 44-45 (quoting *Timex V.I., Inc. v. United States*, 157 F.3d 870, 886 (Fed. Cir. 1998)). The district court also noted that Congress gave the USPTO "broad discretion" to regulate PTA and RCEs, including discretion to define applicant delay, JA 39-40, and that 37 C.F.R. § 1.703 was promulgated through notice and comment rulemaking and had been in force for over a decade, JA 45.

The district court also rejected Exelixis's alternative argument that the USPTO incorrectly calculated the RCE time. The district court noted that the statute does not expressly address the question of how RCE time is calculated, JA

14

47, but that it "is consistent with the statute" to exclude all time following the filing of an RCE, including time after the USPTO issues a notice of allowance, as the USPTO did. JA 50. The district court explained that "such delay emanates solely from an applicant's original failure to file an application fit for a notice of allowance." JA 49. In the view of the district court, it would be "incompatible with the concept of B-delay" to award PTA for any time after the filing of an RCE.[2] *Id.*

## SUMMARY OF ARGUMENT

Under Section 154(b)(1)(B), the USPTO grants a patent term extension "if the issue of an original patent is delayed due to the failure of the United States Patent and Trademark Office to issue a patent within 3 years after the actual filing date of the application." 35 U.S.C. § 154(b)(1)(B). Delays due to the processing of an RCE are not "due to the failure of" the USPTO and so are excluded from this calculation. *See ibid.* This interpretation is consistent with the statutory text and with the purpose of the statute. It is also set out in longstanding USPTO regulations enacted through notice and comment rulemaking and is entitled to *Skidmore* deference. *See* 37 C.F.R. § 1.703.

---

[2]     Because the USPTO prevailed on the question of how RCE time is calculated, we do not address that question in this brief. If Exelixis challenges the district court's ruling on this issue in its appeal, we will address those arguments in our responsive briefing.

Under Exelixis's contrary interpretation, a slight difference in when an RCE was filed could lead to very different amounts of PTA. For example, if an RCE were filed after two years and eleven months, no B-delay PTA time would accrue during the time the RCE was pending. On the other hand, if the RCE were filed a few weeks later, when the application was pending for three years and one day, the applicant would get a day-for-day patent term extension for the entire time that RCE, and any subsequent RCE, was pending. This interpretation would be contrary to Congressional intent by creating considerable incentive to delay filing an RCE and by providing an opportunity to create "submarine" patents through manipulation of the patent examination process.

The *Exelixis I* district court's attempt to remedy these issues is unpersuasive. The court's suggestions would neither avoid disparate treatment of applicants nor eliminate the absurd results caused by Exelixis's interpretation. The *Exelixis I* court further erred in relying on Congress's intent of "'[g]uarantee[ing] . . . no more than 3-year application pendency.'" JA 11 (quoting 35 U.S.C. § 154). It is undisputed that Congress did not require the patent pendency period to be less than three years in all cases. The only question is whether RCEs should be treated the same for PTA purposes regardless of when they were filed. Treating all RCEs the same regardless of their filing dates is consistent with the language of the statute

and avoids the pitfalls inherent in allowing the date on which an RCE was filed to generate great differences in PTA.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment without deference to the lower court, applying the same standard as the district court. *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005).

## ARGUMENT

### PTO HAS REASONABLY CONSTRUED SECTION 154(b)(1)(B) TO EXCLUDE ALL RCE DELAY FROM PATENT TERM ADJUSTMENTS, REGARDLESS OF WHEN THE RCE IS FILED

#### A. Section 154(b)(1)(B) provides for patent term adjustments for delays "due to the failure of" the USPTO

The Patent Act provides for a patent term adjustment "if the issue of an original patent is delayed due to the failure of the United States Patent and Trademark Office to issue a patent within 3 years after the actual filing date of the application." 35 U.S.C. § 154(b)(1)(B). However, Congress made clear that certain periods of delay, including the time consumed by an applicant's request for continued examination, are not attributable to any "failure" on the part of the USPTO. *Ibid.* The statute therefore excludes these periods of delay from the B-delay category of patent term adjustment. The conflicting district court decisions now before this Court reflect a dispute over how that exclusion is applied.

17

As reflected in 37 C.F.R. § 1.703(b), the USPTO construes Section 154(b)(1)(B) to exclude the time consumed by RCE delay from the amount of PTA time that accrues under that section.  Thus, if the USPTO fails to issue a patent within three years, the agency computes the number of days between the three-year date and the issuance of the patent, then subtracts the number of days associated with the RCE to arrive at the PTA figure for B delay.  In other words, the USPTO calculates B delay as the period of time between the three-year date and the filing of the RCE.  This is the interpretation sustained by the district court in *Exelixis II*.

Under the alternative interpretation, pressed by Exelixis and adopted by the district court in *Exelixis I*, the period of delay associated with an RCE is taken into account only in determining whether the patent issued within three years of the application filing date, not in computing the amount of the PTA that accrues thereafter.  The number of days of RCE time is subtracted from the total number of days between the filing of the application and the issuance of the patent.  If the resulting figure is greater than three years, the amount of the patent term adjustment is computed without regard to the RCE delay.

When an RCE is filed before the three-year deadline, these two interpretations produce the same results.  But when an RCE is filed more than three years after the filing of the application, the results diverge dramatically.  Under the interpretation maintained by the USPTO and approved in *Exelixis II*, delay

associated with a post-three-year RCE is not attributed to the USPTO and is not included in the computation of PTA as B delay. But under the interpretation adopted in *Exelixis I*, that period of delay *is* attributed to the USPTO and is included in the PTA calculation as B delay. That approach accords dramatically different treatment to RCE delay depending on whether the RCE is filed before or after the three-year deadline. In contrast, under the USPTO's interpretation, delays associated with RCEs are treated the same way in all cases, regardless of when the applicant files the RCE.

### B. The USPTO's interpretation is consistent with the language, structure, and underlying policy of the patent term adjustment provisions

**1.** The choice between these interpretations is not compelled by the bare text of Section 154(b)(1)(B). In relevant part, the provision states that if the USPTO fails to issue a patent "within 3 years after the actual filing date of the application . . ., *not including . . . any time consumed by continued examination of the application requested by the applicant under section 132(b)* . . .[,] the term of the patent shall be extended 1 day for each day after the end of that 3-year period until the patent is issued." 35 U.S.C. § 154(b)(1)(B ) (emphasis added). The highlighted clause, which states that "any time consumed by" RCEs is "not includ[ed]," is located between the clause defining the three-year period and the clause describing the PTA calculation. Under the USPTO's construction, the RCE

clause is associated with the clause that follows it: if the patent does not issue

within three years, then "not including . . . any time consumed by continued

examination of the application . . . , the term of the patent shall be extended 1 day

for each day after the end of that 3-year period . . ."  Under Exelixis's

interpretation, in contrast, the RCE clause is associated with the clause that

precedes it: if the USPTO fails to issue a patent "within 3 years after the actual

filing date of the application . . . , not including . . . any time consumed by

continued examination of the application," then the patent is extended by 1 day for

each day beyond the 3-year period.[3]

As a grammatical matter, either of these readings is permissible.  But when

the statutory text is viewed as a whole, and when the purposes of the statute are

taken into account, it is clear that the USPTO has properly construed the statute to

exclude RCE time from the calculation of the total amount of B delay that accrues

under this subsection of the statute.

To begin, Section 154(b)(1)(B) is written to exclude "any" RCE time.  It

provides that "*any* time consumed by" an RCE or other listed proceeding, as well

as "*any* delay" requested by the applicant, must be excluded.  35 U.S.C.

---

[3]    The district courts misunderstood the USPTO's argument as requiring insertion of the word "then" into the statute.  *See* JA 14, 38 n.10.  The USPTO merely used this grammatical tool to demonstrate that the "not including" clause can be read as modifying either the preceding or the subsequent clause.

§ 154(b)(1)(B) (emphasis added).  An interpretation that excludes this time only if the RCE is filed or the applicant requests delay within the first three years would be inconsistent with the statute's broad mandate that "any" such time be excluded.

Including the time consumed by RCEs filed after three years in the calculation of PTAs is also in considerable tension with other provisions of Section 154(b).  The same rule that applies to RCE time also would apply to unsuccessful appeal time and time consumed by delays requested by the applicant because these are also listed as exceptions to subsection 154(b)(1)(B).  Under 35 U.S.C. § 154(b)(1)(B)(ii), time consumed by both successful and unsuccessful appeals is excluded when calculating B delay.  If the applicant's appeal is successful, the time consumed by the appeal is separately added back to the amount of PTA pursuant to 35 U.S.C. § 154(b)(1)(C)(iii).  Under Exelixis's interpretation of the statute, time for unsuccessful appeals filed after three years—no matter how frivolous—would be included in the total amount of PTA under § 154(b)(1)(B)(ii), notwithstanding the fact that Congress specified in § 154(b)(1)(C)(iii) that PTA time should be given only for successful appeals.  And if an appeal filed after three years were successful, 35 U.S.C. § 154(b)(1)(C)(iii) would duplicate § 154(b)(1)(B)(ii) and have no effect.[4]  Even more surprising, 35 U.S.C. § 154(b)(1)(B)(iii) would operate

---

[4]     The overlap provision of 35 U.S.C. § 154(b)(2)(A) would prevent any double counting of the time consumed by the successful appeal.

to give PTA time to applicants who specifically request delays in the processing of

their applications if such requests were made after the three-year date.[5]  Providing

PTA for unsuccessful appeals and an applicant's own requests for delay is contrary

to Congress's intent, as recognized by the district court, *see* JA 12, 41 n.11, to

provide applicants with day-for-day patent term extensions only for delays

attributable to the USPTO without providing an opportunity for applicants to

manipulate their patent terms.

In addition to these textual and structural problems, the interpretation

pressed by Exelixis and endorsed in *Exelixis I* produces arbitrary and irrational

distinctions in the operation of the PTA provision.  Under that interpretation, as

explained above, RCE time would be treated very differently depending on the

happenstance of when the RCE was filed.  If an RCE was filed when the

application was pending for two years and eleven months, no B-delay PTA would

be given for the time the RCE was pending.  On the other hand, if the RCE was

filed three years and one day after the application filing date, the B-delay PTA

would include a day-for-day adjustment for the entire time the RCE (and any other

---

[5]    Delay in the processing of the application requested by the applicant is treated separately as applicant delay pursuant to 35 U.S.C. § 154(b)(2)(C) and subtracted from the total amount of PTA time under that subsection.  *See* 37 C.F.R. § 1.704.  Thus, under the USPTO's regulations, any such delays requested by the applicant after the application has been pending for three years ultimately may be subtracted from the PTA.

subsequent RCE) was pending.  In effect, this interpretation would treat the delay associated with an RCE as the applicant's responsibility when the RCE is filed before the three-year time limit, but the USPTO's responsibility when the RCE is filed after that date.  As the *Exelixis II* court explained, this result is "absurd" and not supported by the structure or purpose of the statute.  JA 39, 41-45.

Moreover, the USPTO's interpretation, unlike Exelixis's, minimizes an applicant's incentive to engage in behavior associated with "submarine" patents. An applicant of a "submarine" patent will often "purposefully delay the consideration of their application through meaningless amendments and repeated continuance requests" until "someone else has invested heavily in a similar invention."  S. Rep. No. 105-42, at 52 (1997).  Then "the submarine applicant causes his application to 'surface' as a patent."  *Ibid.*  A submarine patent typically states the "claims as broadly as possible in order to increase the chances that the[] claims will overlap other inventions."  *Ibid.*  In Congress's view, submariners "do tremendous damage" and "undermine the entire patent system which is based on encouraging inventors to disclose and market their inventions as soon as possible." S. Rep. No. 105-42, at 52; H.R. Rep. No. 105-39, at 34 (1997).

When Congress began work on the provision at issue in this case, it was very concerned with avoiding the submarine patent problem.  Submarine patents had been a serious issue prior to 1994, when the term of a patent was 17 years from the

date the patent was issued. Under that rule, an applicant could indefinitely delay

the grant of its patent and still take advantage of the 17-year patent term. In 1994,

as part of the implementation of the Uruguay Round of the General Agreement on

Tariffs and Trade (GATT), Congress amended the statute to provide that the term

of a patent would last 20 years from the date that the patent application was filed.

*See* Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809 (1994).

This change largely resolved the submarine patent problem, because the term of a

submarine patent that later "surface[d]" would be only the time remaining in the

20-year period that began on the filing date. S. Rep. No. 105-42, at 52. However,

the change meant that the total patent term could be less than 17 years for even the

most diligent patent applicant if USPTO processing delays prevented the patent

from issuing within three years of filing. S. Rep. No. 105-42, at 40.

The current statute represents a balance between the guarantee of a 17-year

patent term and the protection against submarine patents. The Senate report on a

preliminary draft of amendments at issue in this case explained that the

amendments were intended to "provide[] the benefit of the pre-GATT 17-year term

but . . . not invite the unscrupulous and terribly wasteful practice of submarine

patenting." S. Rep. No. 105-42, at 101. The statute was designed to "preserve[]

the 20-year term's disincentive to manipulate the patent examination system." S.

Rep. No. 105-42, at 42. The statute thus provides that, subject to certain

exceptions, B delay is available when the patent is delayed due to failure by the USPTO to issue a patent within three years. Thus, time consumed by applicant delays is subtracted from the PTA. The statute thus seeks to guarantee a 17-year patent term to "diligent applicants" but not those who "purposely manipulate" the system. H.R. Rep. No. 106-287, at 50 (1999).

Exelixis's interpretation would run contrary to Congress's careful balance by giving applicants PTA for delay that was not attributed to the USPTO. Indeed, it would give applicants many opportunities to extend their patent terms by drawing out the examination of their applications and still collecting PTA. Under Exelixis's interpretation, an applicant could file an overly broad application in the first instance, receive final rejections, and refine the claims only slowly through successive RCEs. The district court found that something similar happened in *Exelixis II*. Likewise, for one of the patents at issue in another case currently pending before this Court that raises the same PTA issue being adjudicated here, the applicant filed three RCEs and several additional amendments to the claims during the course of the RCEs after the end of the three year period, adding several years to the processing of the application. *See Novartis AG v. Rea*, Nos. 2013-1160, 2013-1179 (Fed. Cir). There is no limit on the number of RCEs that can be filed, so an applicant could extend examination for many years. *See* 37 C.F.R. § 1.114. An applicant can even file an RCE even after a notice of allowance issues.

*See* www.uspto.gov/patents/init_events/rce_outreach_data.pptx, slide 6 (explaining that 11% of RCEs are filed after a notice of allowance). In addition, an applicant could further extend PTA by filing unmeritorious appeals with the Board after receiving a final rejection before amending the claims to address the reasons for an examiner's rejection. 35 U.S.C. § 154(b)(1)(B)(ii).

Even the most scrupulous applicants would have reason to delay their applications under Exelixis's interpretation. For example, when the USPTO issues a final rejection six months or less before the three-year mark, the applicant could wait until after the three-year mark to file its RCE. The applicant could then get the benefit of a day-for-day PTA for the entire time the RCE and any subsequent appeal were pending. Indeed, in another case currently pending in the Eastern District of Virginia, the applicant requested an extension and waited six months after issuance of the final rejection to file for its RCE and is now requesting PTA for the entire time the RCE was pending. *See Ariad Pharmaceuticals, Inc. v. Rea*, No. 12-0886, Complaint, Doc. No. 1 at 6 (E.D. Va. Aug. 9, 2012) (final rejection issued by USPTO at 31 months, applicant waited over six months to file RCE).[6]

---

[6]   Law firms are already advising that "[p]atent applicants should, if possible, wait to file an RCE until three years after the application filing date." Steven I. Weisburd & Paul C. Maier, *Exelixis, Inc. v. Kappos*: District Court Overturns USPTO Calculation of Patent Term Adjustment (Nov. 19, 2012), *available at* http://www.dicksteinshapiro.com/resources/alerts/detail.aspx?publication=2234 (last viewed 1/17/2013); District court finds RCE's have no impact on PTA accrual
*Continued on next page.*

Because a significant amount of examination may follow the applicant's RCE and applicants may file an unlimited number of RCEs, a number of recent PTA plaintiffs have begun to seek lengthy adjustments to their patent terms (*e.g.*, more than 4 years) based on their serial RCEs filed after the three-year mark. *See, e.g.*, *Oncothyreon Inc. v. Kappos*, No. 12-1404, Complaint, Doc. No. 1 at 3-4, 9 (E.D. Va. Dec. 6, 2012) (seeking 2633 additional days of B delay including four RCEs); *University of Iowa Research Foundation v. Kappos*, No. 12-1444, Complaint, Doc. No. at 8, 9 (E.D. Va. Dec. 14, 2012) (seeking 2403 additional days of B delay including five RCEs); *Abbott Laboratories v. Kappos*, No. 12-1499, Complaint, Doc. No. at 5 and Ex. B (E.D. Va. Dec. 27, 2012) (seeking 2750 days of B delay including five RCEs). Applicants who willfully delay filing an RCE until after the three-year mark should not be rewarded with additional patent term, while applicants who act quickly do not get any PTA for the time that their RCEs are pending.

### C. The *Exelixis I* district court did not convincingly address the implications of its ruling

The *Exelixis I* district court's attempt to address these issues is unpersuasive. The district court stated that the USPTO could avoid the problems created by the

---

if filed more than three years after the us filing date, *available at* http://www.mwzb.com/news.php (last viewed 1/17/2013) ("applicants should consider waiting to file a RCE until three years after the application filing date (if possible)").

district court's interpretation by "aim[ing] to issue any notice of rejection before the expiration of the three year period." JA 15. However, the USPTO would need to act considerably earlier to avoid those effects, because an applicant can file an RCE up to six months after the final rejection. *See* 37 C.F.R. § 1.114(a)(2) (RCE must be filed prior to abandonment of application); 37 C.F.R. §§ 1.134, 1.135 (where no other time limit is specified, patent is abandoned if applicant fails to reply within six months).[7] Additionally, as the *Exelixis II* district court noted, applicants filing overbroad and repeated amendments may make it very difficult for the USPTO to act within the three years. While the USPTO agrees that the applicant should get patent term adjustment under subsection 154(b)(1)(B) when it takes more than three years to issue the initial application as a patent, it does not follow that an applicant should be permitted to unilaterally extend that PTA without limitation simply by filing RCEs.

The *Exelixis I* court also asserted that the USPTO could limit the disparate effects created by its interpretation by shortening the time to file an RCE to one month. JA 15. But the RCE process is an important means of ensuring that applicants ultimately are able to secure their patent claims under the Patent Act,

---

[7] Although an applicant has six months to file an RCE, any time beyond three months may be considered applicant delay under 35 U.S.C. § 154(b)(2)(C)(ii). If Exelixis were successful in this appeal, the USPTO would need to consider the effect of these provisions on the PTA calculation.

and significantly shortening the time could compromise the utility of the RCE process.  Moreover, the court's one-month suggestion does not avoid the problem of its disparate treatment of RCEs, it merely decreases the time period during which applicants can delay their RCE filings to take advantage of the disparity.

The *Exelixis I* court acknowledged that its interpretation produced "disparities," but dismissed their significance on the ground that they "arise only at the margins."  JA 15.  The court's interpretation, however, produces a categorical disparity between RCEs filed before the three-year deadline and RCEs filed after that date, not merely a disparity "at the margins" between RCEs filed immediately on either side of the deadline.  This disparate treatment has significant implications because many notices of final rejection are issued in the final six months of the three-year period.  Between October 1, 2009 and July 31, 2012, the USPTO issued a final rejection in over 100,000 applications in that final six-month window of time.  JA 948.  This makes perfect sense considering the structural change in the calculation of patent term that Congress enacted in 1994.  Specifically, when U.S. patent terms shifted from 17 years from patent issue date to 20 years from filing date, Congress accommodated the generally-understood notion of a three-year application pendency period.  In fact, the guarantee of a three-year pendency for the initial application proves the opposite of the *Exelixis I* court's point: the three-year mark set forth in subsection 154(b)(1)(B) represents Congress's

acknowledgement that the USPTO would often issue final decisions—*e.g.*, final rejections or notices of allowance—at or around the three-year mark.

The *Exelixis I* district court asserted that an applicant should not be punished for filing an RCE. JA 13. However, nothing in the USPTO's interpretation punishes the applicant. The statute sets out a scheme in which PTA is granted to compensate "for delays in examination and processing attributable to the PTO." JA 12. A rule that RCE time, unsuccessful appeal time, and applicant-requested delay is not "delay due to the failure of" the USPTO, 35 U.S.C. § 154(b)(1)(B), does not punish the applicant. It simply does not *reward* the applicant by extending the patent term for delay that is the applicant's responsibility rather than the USPTO's. Indeed, without the RCE process, Exelixis might have had to abandon the application, losing the earlier patent application date and any PTA already accrued. The USPTO's interpretation allows Exelixis to file repeated RCEs, taking advantage of the earlier filing date.

Nor is there anything odd about excluding RCE time from the calculation of B delay when the USPTO has chosen not to include RCE time in the list of delays that are due to failure of an applicant "to engage in reasonable efforts to conclude prosecution of the application," which are set out in its regulations at 37 C.F.R. § 1.704. *See* 35 U.S.C. § 154(b)(2)(C). RCEs serve a valuable function in the patent application process and not every RCE reflects a failure to engage in

reasonable efforts. RCE time is thus excluded only from the determination of B delay, not from the overall calculation. An applicant can accrue other categories of PTA (including A delay and C delay) while an RCE is pending after the three-year mark. *See* 65 Fed. Reg. 56366-01, 56376 (Sept. 18, 2000). Thus, unlike periods of applicant delay time, RCE time has no affect at all on the PTA calculation if the patent application is resolved within three years.

The *Exelixis I* court also erred in holding that Exelixis's reading best realized Congress's intent of "'guarantee[ing] . . . no more than 3-year application pendency.'" JA 11 (quoting 35 U.S.C. § 154). In the view of the district court, Congress's "clear goal" was "to provide a successful applicant with a patent that can be enforced against putative infringers for approximately 17 years." JA 6. But it is undisputed that Congress did not require the patent application pendency period to be less than three years in all cases. If the RCE is filed before the patent has been pending for three years, no PTA is given for the RCE time under 35 U.S.C. § 154(b)(1)(B), even if examination continues thereon for more than three years. The patent term can therefore be significantly less than 17 years even under Exelixis's reading. The only question is whether RCEs should be treated the same for PTA purposes regardless of when they were filed. As the USPTO concluded, treating all RCEs the same regardless of filing date is consistent with the language and the purpose of the statute.

**D.    The USPTO's consistent interpretation of this provision is entitled to deference**

For the foregoing reasons, even if this Court were considering the interpretive issue entirely *de novo*, the correct conclusion would be that RCE time is properly excluded from the PTA calculation regardless of when the RCE is filed. But that interpretation is not merely correct as a *de novo* matter.  It is also the longstanding and consistently maintained interpretation of the USPTO, as embodied in a regulation.  The USPTO's considered administrative interpretation of these provisions is entitled to judicial deference under *Skidmore v. Swift & Co.,* 323 U.S. 134 (1944).  Under *Skidmore,* this Court "defer[s] to an agency interpretation of the statute that it administers if the agency has conducted a careful analysis of the statutory issue, if the agency's position has been consistent and reflects agency-wide policy, and if the agency's position constitutes a reasonable conclusion as to the proper construction of the statute, even if we might not have adopted that construction without the benefit of the agency's analysis." *Cathedral Candle Co. v. U.S. Intern. Trade Com'n*, 400 F.3d 1352, 1366 (Fed. Cir. 2005).

Both district courts held that the statutory provision at issue "does not address the filing of an RCE *after* the expiration of the three year clock."  JA 12, 37-38.  As the *Exelixis II* court noted, Congress left significant discretion to the USPTO in both determining PTA time and how to process RCEs.  JA 39-40. Congress authorized the Director to prescribe regulations "establishing procedures

32

for the application for and determination of patent term adjustments," including "establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application." 35 U.S.C. § 154(b)(2)(C)(iii), 154(b)(3)(A). Congress also authorized the Director to "prescribe regulations to provide for the continued examination of applications for patent at the request of the applicant." 35 U.S.C. § 132(b).

Here, the USPTO's interpretation is formally embodied in a regulation, which was enacted through notice and comment rulemaking. *See Rubie's Costume Co. v. United States*, 337 F.3d 1350, 1356 (Fed. Cir. 2003) (finding that deliberative notice and comment rulemaking supports *Skidmore* deference). The regulation has been in effect for more than ten years and has been applied consistently during that period. *See id.* at 1358-59. And, as explained above, the regulation is not only reasonable, it reflects the USPTO's considered judgment regarding how best to preserve the balance Congress struck between guaranteeing a 17-year patent term and the protecting against submarine patents. This is precisely the kind of administrative interpretation that is entitled to *Skidmore* deference.[8]

---

[8] The District Court for the District of Columbia held that the USPTO's position was not consistent because, in the court's view, 37 C.F.R. § 1.703 was contrary to 37 C.F.R. § 1.702. *Novartis AG v. Kappos*, __ F. Supp. 2d __, 2012 WL 5564736, *14 (Nov. 15, 2012), *appeal pending*, Nos. 2013-1160, 2013-1179

*Continued on next page.*

Even if this Court were to find that RCE time should be included in PTA, a remand would be needed to allow the USPTO to revise its rules and calculate PTA under this Court's interpretation of the statute, as occurred following this Court's decision in *Wyeth v. Kappos*, 591 F.3d 1364 (Fed. Cir. 2010). At a minimum, therefore, this Court should remand to allow the USPTO to recalculate PTA under this Court's interpretation of the statute.

---

(Fed. Cir.). Section 1.702 mirrors the language of the statute, providing that the "term of an original patent shall be adjusted if the issuance of the patent was delayed due to the failure of the Office to issue a patent within three years after the date on which the application was filed . . ., but not including . . . Any time consumed by continued examination of the application under 35 U.S.C. 132(b)." The USPTO understands and has always applied §§ 1.702 and 1.703 to provide that B delay is calculated "not including" RCE time. This interpretation of § 1.702 is fully consistent with the USPTO's interpretation of the statute.

## CONCLUSION

The judgment of the *Exelixis I* court should be reversed and the judgment of

the *Exelixis II* court should be affirmed.

Respectfully submitted,

STUART F. DELERY
   *Acting Assistant Attorney General*

NEIL H. MACBRIDE
   *United States Attorney*

SCOTT R. MCINTOSH

*Of Counsel:*

BERNARD J. KNIGHT, JR.
   *General Counsel*

NATHAN K. KELLEY
   *Deputy Solicitor*

BRIAN T. RACILLA
MONICA B. LATEEF
  *Associate Solicitors*
  *Office of the Solicitor – Mail Stop 8*
  *U.S. Patent and Trademark Office*
  *P.O. Box 1450*
  *Alexandria, Virginia 22313-1450*

 /S/ DANA KAERSVANG
DANA KAERSVANG
  *(202) 307-1294*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7216*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C. 20530*

APRIL 2013

**CERTIFICATE OF COMPLIANCE WITH**
**FEDERAL RULE OF APPELLATE PROCEDURE 32(A)**

I hereby certify that this brief complies with the requirements of Fed. R.

App. P. 32(a)(5) and (6) because it has been prepared in Microsoft Word 2010

using 14-point Times New Roman, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of

Fed. R. App. P. 32(a)(7)(B) because it contains 8,216 words, excluding the parts of

the brief exempted under Fed. R. App. P. 32(a)(7)(B)(iii) and Circuit Rule 32(b),

according to the count of Microsoft Word.


  /s/Dana Kaersvang
DANA KAERSVANG

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2013, I electronically filed this brief and addendum with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system. I further certify that I will cause 6 paper copies to be filed with the Court within five days of the Court's acceptance of the brief.

The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system. Two paper copies of the brief and addendum will be served on counsel by Federal Express at the following addresses at the same time that paper copies are sent to the Court.

John Michael Huget
Deborah J. Swedlow
Emily Justine Tait
Honigman Miller Schwartz and Cohn LLP
130 S. First Street, 4th Floor
Ann Arbor, MI 48104

Houda Morad
Steptoe & Johnson, LLP
1330 Connecticut Avenue, NW
Washington, DC 20036

/s/Dana Kaersvang
DANA KAERSVANG

**ADDENDUM**

# ADDENDUM CONTENTS

*Exelixis v. Kappos*, Opinion, No. 12-0096 (November 1, 2012),
as amended ........................................................................................A1
*Exelixis v. Kappos*, Order, No. 12-0096 (November 1, 2012) .........................A21
*Exelixis v. Kappos*, Judgment, No. 12-0096 (November 2, 2012) ......................A23
35 U.S.C. § 154(b) ...............................................................................A24
37 C.F.R. § 1.702(b) ............................................................................A28
37 C.F.R. § 1.703 .................................................................................A29

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

EXELIXIS, INC.,                          )
    Plaintiff,                       )
                                   )
        v.                          )      Case No. 1:12cv96
                                     )
HON. DAVID J. KAPPOS, Under               )
Secretary of Commerce for Intellectual    )
Property and Director of the United       )
States Patent and Trademark Office,       )
    Defendant.                       )

## <u>MEMORANDUM OPINION</u>

In the 1990's, Congress twice significantly altered the patent law landscape. First, in 1994, Congress enacted the Uruguay Round Agreements Act,[1] which (i) required the term of a patent to be measured from the date of application, (ii) extended a patent term from 17 to 20 years, and (iii) created patent term adjustment ("PTA"), extending the length of a patent term in the event that certain delays occurred in the processing of the application. Second, in 1999, Congress again altered the patent landscape by enacting the American Inventors Protection Act of 1999 ("AIPA"),[2] which significantly amended the PTA provisions and provided for a Request for Continued Examination ("RCE"), which permits an applicant to request additional examination of the patent application. Predictably, these alterations in the patent law landscape spawned substantial litigation, of which this case is a recent example.

---

[1] Pub. L. No. 103–465, Dec. 8, 1994, 108 Stat. 4809 (codified as amended in scattered sections of 35 U.S.C.).

[2] Pub. L. No. 106–113, 113 Stat. 1536 (codified as amended in scattered sections of 35 U.S.C.).

A1

Presented here is the following, as yet unresolved, question concerning the application of

AIPA's PTA provision:

> Whether 35 § 154(b)(1)(B) requires that an applicant's PTA be reduced by the time attributable to an RCE, where, as here, the RCE is filed after the expiration of AIPA's guaranteed three year period.

For the reasons that follow, § 154's plain language neither addresses nor requires that an

applicant's PTA be reduced by the time required to process an RCE that is filed after the

expiration of the three year period.[3]

## I.

Exelixis, Inc. ("Exelixis"), a Delaware corporation with its principal place of business in

San Francisco, California, is the owner of United States Patent No. 7,989,622 ("the '622

patent"). This patent—entitled "Phosphatidylinositol 3-Kinase Inhibitors and Methods of their

Use"— covers certain molecules that inhibit an enzyme associated with certain cancers that may

be useful for the treatment and prevention of those cancers.

The administrative record reflects the various events that occurred in the course of the

prosecution and examination of the application that led to the issuance of the patent. Only a few

of these events—those pertinent to the PTA calculation and hence to the question presented—

merit mention here.

First, the record reflects that the application for the '622 patent[4] was filed on January 15,

2008. The record shows that the next event of PTA significance occurred on February 22, 2010,

---

[3] Exelixis points out that if the question presented were decided to the contrary, it would be necessary to resolve a second question, namely whether the period of time between the date of the Notice of Allowance and the date of the patent issuance is properly included as "time consumed by continuing examination" under § 154(b)(1)(B)(i).

[4] This application was a national stage application of a Patent Cooperation Treaty application. The Patent Cooperation Treaty is "an international agreement allowing inventors to streamline

–2–

when the United States Patent and Trademark Office ("PTO") issued a "Restriction and/or

Election Requirement," its first notice pursuant to 35 U.S.C. § 132. This filing came

approximately 25 months after the application was filed. The timing of this PTO filing is

important to the PTA calculation inasmuch as § 154(b)(1)(A) requires the PTO to provide at

least one § 132 notice (or alternatively, a notice of allowance) not later than 14 months after the

application is filed, and to the extent the § 132 misses this 14 month deadline, the applicant

receives a day for day credit toward the PTA.

The next event with PTA significance occurred, as the record reflects, on March 9, 2011,

approximately 38 months after the application filing date, when the PTO issued a Final Rejection

of the application. Barely a month later, Exelixis, on April 11, 2011, filed the RCE at issue here.

This RCE modified and supplemented the application as follows: (i) claims 1–12, 14, 15, and

17–33 were cancelled, (ii) claims 13 and 16 were amended, (iii) claims 34–38 were added, and

(iv) additional support was provided for the amended and added claims.

Thereafter, the PTO, with commendable, if, with respect to this application,

uncharacteristic alacrity, responded less than three weeks later by mailing to Exelixis a "Notice

of Allowance & Fees Due" with respect to the application. This Notice advised Exelixis (i) that

"prosecution on the merits has closed," (ii) that the application "is allowed for issuance as a

patent," and (iii) that the PTA for the '622 patent was calculated as 283 days, meaning that the

'622 patent term would extend 20 years plus 283 days from the date of the patent application.

The record next shows that on April 28, 2011, Exelixis paid the issue fee, but then for

reasons not disclosed in the record, the PTO did not mail the "Issue Notification" to Exelixis

---

the process of obtaining patent rights across multiple member nations." *Helfgott & Karas, P.C.
v. Dickenson*, 209 F.3d 1328, 1330 (Fed. Cir. 2000).

until July 17, 2011. The '622 patent issued thereafter on August 2, 2011. The Issue Notification included the PTO's final PTA calculation for the patent,[5] totaling 368 days, consisting of (i) 344 days for PTA attributable to the PTO's failure to file a § 132 notification within 14 months of the patent application date, as required by § 154(b)(1)(A) ("A delay"), (ii) 85 days of PTA attributable to the PTO for the failure of a patent to issue within 3 years of the application date, as required by § 154(b)(1)(B) ("B delay"), (iii) 0 days of PTA pursuant to § 154(b)(1)(C) ("C delay"), and (iv) a 61 day PTA reduction attributable to Exelixis' delay pursuant to § 154(b)(2)(C) ("C reduction").

Exelixis does not dispute the PTO's calculation of A delay, C delay, or C reduction; instead, the parties' dispute focuses sharply on the PTO's B delay calculation. The PTO contends that the 85 days of B delay is arrived at by subtracting the number of days attributable to the RCE, 114 days (April 11, 2011 to August 2, 2011), from 199 days (the number of days from the expiration of the three year period—January 15, 2008 to January 15, 2011—to the issuance of the patent on August 2, 2011). Exelixis disagrees with the PTO's decision to reduce the PTA by the RCE and argues instead that the proper B delay calculation is 199 days, the number of days between the end of the § 154(b)(1)(B) guaranteed three year period (January 15, 2011) and the issuance of the patent (August 2, 2011). The following time line illustrates the '622 patent's path to issuance and the parties' competing B delay calculations:

---

[5] The difference between the April 27, 2011 PTA calculation and the final PTA calculation reflects the addition of the B delay PTA.

– 4 –



As the timeline shows, the PTO's notice of rejection, Exelixis' RCE, the PTO's notice of allowance, and the issuance of the patent all occurred after the expiration of the three year period that commenced on the application filing date. And as the timeline also makes clear, the question that divides the parties on these facts is whether § 154(b)(1)(B) requires that, or even addresses whether, any PTA be reduced by time attributable to an RCE where, as here, the RCE is filed after the expiration of the three year guarantee period specified in that statute.

## II.

Resolution of this question is informed by a brief overview of AIPA's PTA provisions. The starting point in this overview is to note that Congress, in 1994, in order to implement international agreements, amended the patent laws to extend the length of a patent term to 20 years, measured from the date of the patent application.[6] Prior to this amendment, a patent term was 17 years, measured not from the application date, but from the date of the patent issuance. Recognizing that the examination and prosecution phase might result in delays in the issuance of

---

[6] Uruguay Round Agreements Act, Pub. L. No. 103–465, Dec. 8, 1994, 108 Stat. 4809 (codified as amended in scattered sections of 35 U.S.C.).

-5-

a patent, Congress in the 1994 amendment provided for adjusting the patent term to account for delays that might occur owing to "interference delay," "secrecy orders," or "appellate review."[7] Then, in 1999, Congress again amended these provisions to add the PTA provisions now found in § 154(b).[8] Taken as a whole, the clear goal and purpose of these provisions is to provide a successful applicant with a patent that can be enforced against putative infringers for approximately 17 years—20 years from the date of application less the three years for prosecution and examination—and to reach this goal by providing applicants with day for day patent term extensions for delays attributable to the PTO and day for day reductions of the patent term extension for delays attributable to an applicant's failure to act with alacrity in certain circumstances.

## A. The Patent Application Process

In order to patent an invention, a person must apply to the PTO for a patent. 35 U.S.C. § 111. A PTO patent examiner then determines whether the "applicant is entitled to a patent under the law," and, if so, the PTO issues a patent. 35 U.S.C. § 131. If the patent examiner makes a contrary finding, then the PTO will issue a notice of rejection that puts forth "the reasons for such rejection." 35 U.S.C. § 132(a). If the applicant receives a rejection notice, the applicant may continue to pursue the issuance of the patent as is, or may make an amendment to the patent application. On the second, or any subsequent, examination of the patent application, the patent examiner may determine that the rejection is final. 37 C.F.R. § 1.113. The applicant's options

---

[7] *Id.*

[8] AIPA, Pub. L. No. 106–113, 113 Stat. 1536 (codified as amended in scattered sections of 35 U.S.C.). The portion of the AIPA that altered the PTA regime is sometimes referred to as the Patent Term Guarantee Act of 1999. *See, e.g., Wyeth v. Dudas*, 580 F.Supp.2d 138, 139 (D.D.C. 2008).

are then limited to an "appeal in the case of rejection of any claim" or "to [an] amendment" of the application. *Id.* The RCE is one such amendment. Once a final rejection has issued, the applicant generally has up to six months to file an RCE before the application is abandoned. *See* 37 C.F.R. § 1.135. An RCE, which may consist of (but is not limited to) "an information disclosure statement, an amendment to the written description, claims, or drawings, new arguments, or new evidence in support of patentability," functions to continue the examination of the current application by reopening the prosecution. 37 C.F.R. § 1.114(b).

Once the PTO determines that the application contains patentable claims, the PTO will issue a "Notice of Allowance" that informs the applicant that he "is entitled to a patent under the law[.]" 37 C.F.R. § 1.311(a). The applicant must then pay the requisite fees within three months, otherwise the application will be deemed abandoned. *Id.* Even after the fee has been paid, up until the patent actually issues, the application may be withdrawn by either the PTO or the applicant. 37 C.F.R. § 1.313.

**B. Patent Term Adjustments**

Subsection 154(b) of Title 35 governs the determination and measurement of PTA. Paragraph (1) of this subsection, entitled "Patent term guarantees," sets forth three general guarantees designed to expedite the application, prosecution, and examination process. This paragraph also describes the various categories of events that generate PTA, i.e., events that result in the extension of the patent term.

First, subparagraph (A), entitled "Guarantee of prompt Patent and Trademark Office responses,"[9] extends the patent term if the PTO fails to carry out certain acts during the

---

[9] It is well settled that "'the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute." *Almendarez-Torres v. United States,*

– 7 –

prosecution and examination of the patent within prescribed timelines. For example, if the PTO

takes more than four months to issue a patent once the "issue fee was paid" and "all outstanding

requirements were satisfied," then PTA is granted on a day for day basis for each day longer than

four months until the patent is issued. § 154(b)(1)(A)(iv).

Next, subparagraph (B), entitled "Guarantee of no more than 3-year application

pendency," extends the patent term on a day for day basis "for each day after the end of that 3

year period until the patent is issued." § 154(b)(1)(B). Subparagraph (B) ensures that the patent

prosecution and examination process proceeds expeditiously to preserve an approximately 17

year patent term measured from the date of issuance. Certain events, such as time consumed by

an RCE or by an applicant requested delay, are "not included" in the measurement, and here the

parties disagree as to whether these events are "not included" in the measurement of the three

year period (Exelixis' position) or in the PTA calculation (the PTO's position).

Finally, subparagraph (C), entitled "Guarantee of adjustments for delays due to

interferences, secrecy orders, and appeals," extends the patent term on a day for day basis for

"each day of the pendency of the proceeding, order, or review[.]" § 154(b)(1)(C). Put simply,

subparagraph (C) grants PTA for time consumed by certain special proceedings that may occur

during the course of the prosecution and examination of the application.

The PTA awarded under paragraph (1) is subject to certain limitations set out in

paragraph (2), entitled "Limitations." Subparagraph (A) of paragraph (2) makes clear that "to

---

523 U.S. 224, 234 (1998) (quoting *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528–29 (1947)); *see also I.N.S. v. Nat'l Center for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991) ("the title of a statute or section can aid in resolving an ambiguity in the legislation's text"); *Reese v. United States*, 24 F.3d 228, 231 (Fed. Cir. 1994) (using the section title as an aid to resolving a statutory ambiguity); *United States v. Clawson*, 650 F.3d 530, 536 (4th Cir. 2011) (noting that the statute's "heading further supports [the court's] determination" of statutory meaning).

the extent that periods of delay . . . overlap, the period of any adjustment granted under this subsection shall not exceed the actual number of days the issuance of the patent was delayed." § 154(b)(2)(A).[10] In other words, the PTA calculation must not double count; the applicant may not receive more than one day of PTA for the same calendar day. Next, subparagraph (B) limits the granting of PTA for disclaimed patent terms. Finally, subparagraph (C), entitled "Reduction of period of adjustment," reduces PTA for time consumed by delays attributable to the patent applicant. This includes the reduction of PTA by "a period equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution of the application." § 154(b)(2)(C)(i). The remaining paragraphs under subsection (b) set forth the procedures for the determination of PTA and for appeals of such determinations.

In this action, Exelixis contends that the PTO improperly calculated B delay by not providing a day for day PTA for time consumed by the RCE filed after the three year period had expired. In opposition, the PTO argues that the time consumed by an RCE is always excluded from the calculation of B delay because, in the PTO's view, any time consumed by an RCE is subtracted from the PTA awarded under subparagraph (B), regardless of when the RCE is filed.

## III.

A case is ripe for summary judgment where "there 'is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" *Wyeth*, 591 F.3d at 1369 (quoting Fed.R.Civ.P. 56(c)). Because in the present case both parties "perceive no genuine issues of material fact," there is only a legal determination to be made, namely whether the PTO's method for calculating PTA under § 154(b)(1)(B) is contrary to law. *See id.* The PTO's

---

[10] *See Wyeth v. Kappos*, 591 F.3d 1364, 1368–72 (rejecting the PTO's "greater-of-A-or-B rubric" and holding that § 154(b)(2)(A) applies only where there is overlap between A delay and B delay).

– 9 –

determination of PTA is subject to judicial review under the Administrative Procedure Act. 35
U.S.C. § 154(b)(4)(A). Thus, a district court may only set aside the PTO's decision if it is
"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.
§ 706(2)(A). An agency abuses its discretion "where the decision is based on an erroneous
interpretation of the law, on factual findings that are not supported by substantial evidence, or
represents an unreasonable judgment in weighing relevant factors." *Star Fruits S.N.C. v. United
States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005); *Arnold Partnership v. Dudas*, 362 F.3d 1338, 1340
(Fed. Cir. 2004).

## IV.

Analysis of the question presented properly begins with the plain language of the statute.
As the Supreme Court has noted, "it is axiomatic that '[t]he starting point in every case involving
construction of a statute is the language itself.'" *Landreth Timber Co. v. Landreth*, 471 U.S. 681,
685 (1985) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 (1975) (Powell,
J., concurring)).[11] Further, the Supreme Court has made clear that where "the statute's language
is plain, 'the sole function of the courts is to enforce it according to its terms.'" *U.S. v. Ron Pair
Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (quoting *Caminettie v. United States*, 242 U.S. 470,
485 (1917)). The Supreme Court has warned, however, that there may be "rare cases [in which]
the literal application of a statute will produce a result demonstrably at odds with the intentions
of its drafters." *Ron Pair Enterprises*, 489 U.S. at 242 (quoting *Griffin v. Oceanic Contractors,
Inc.*, 458 U.S. 564, 571 (1982)). It is only in those rare cases that "the intention of the drafters,
rather than the strict language, controls." *Id.* And in the Federal Circuit, "only a 'most

---

[11] *See also Wyeth*, 591 F.3d at 1369 ("As always, the starting point in every case involving
construction of a statute is the language itself.") (internal quotation marks omitted).

– 10 –

extraordinary showing of contrary intentions' by Congress justifies a departure from the plain

language of a statute." *Wyeth*, 591 F.3d at 1371 (quoting *Garcia v. United States*, 469 U.S. 70,

75 (1984)). Thus, a court must give a statute its plain language meaning unless that meaning

clearly contradicts the drafter's intent.

Here, the plain language meaning of subparagraph (B) is clear, unambiguous, and in

accord with both the statute's structure and purpose. Subparagraph (B) provides in pertinent

part,

> Subject to the limitations under paragraph (2), if the issue of an original patent is
> delayed due to the failure of the United States Patent and Trademark Office to
> issue a patent within 3 years after the actual filing date of the application in the
> United States, not including:
>> (i) any time consumed by continued examination of the application
>> requested by the applicant under section 132(b);
>> . . .
> the term of the patent shall be extended 1 day for each day after the end of that 3-
> year period until the patent is issued.

35 U.S.C. § 154(b)(1)(B). Simply put, the goal of this subparagraph, as its title indicates, is a

"Guarantee of no more than 3-year application pendency." It accomplishes this goal by (i)

starting a three year clock on the date the application is filed, (ii) tolling the running of this clock

if, within the three year period, any of three events occur, including an RCE filing, and (iii)

adding a day for day PTA to the patent term for any delay in the issuance of the patent after the

three year clock, less any tolling, runs out. Thus, subparagraph (B) essentially describes two

calculations. The first is a description of the calculation of the three year period: The three year

clock beings to run on the date the application is filed and, except for three specific potential

tolling events, including the filing of an RCE, the clock runs continuously until the three year

period ends. In other words, the "not including" portion of subparagraph (B), followed by (i),

(ii), and (iii), clearly and unambiguously modifies and pertains to the three year period and does

not apply to, or refer to, the day for day PTA remedy. Subparagraph (B)'s second calculation is

– 11 –

simply a day for day addition to the PTA for every day beyond the end of the three year clock until the patent issues.

Especially notable about this reading of subparagraph (B), which is commanded by the provision's plain and unambiguous language, is that it does not address the filing of an RCE after the expiration of the three year clock. To be sure, the provision makes clear that the clock is tolled for the processing of an RCE filed before the three year clock runs out, but the provision does not refer to or mention RCE's filed after the three year clock has run. Instead, subparagraph (B) makes clear that once the three year clock has run, PTA is to be awarded on a day for day basis regardless of subsequent events.

Also notable of subparagraph (B) is that the reading compelled by its plain language is firmly supported by § 154(b)'s structure and purpose. The statute's purpose is to ensure that an applicant is provided with a PTA remedy for delays in examination and processing attributable to the PTO and to reduce any PTA by delays attributable to the applicant. Significantly, § 154(b) does not treat an RCE filing as applicant delay; instead applicant delay is treated in § 154(b)(2)(C), which is captioned "Reduction of period of adjustment"[12] and does not refer to RCE's. The RCE is treated only in subparagraph (B), which specifies that an RCE filed during the running of the three year clock tolls the running of that clock while the RCE is processed. In other words, the statute does not consider an applicant's submission of an RCE as "applicant delay" that warrants reduction under § 154(b)(2)(C); rather, the statute simply treats the time devoted to an RCE as time that should not be counted against the PTO in the running of the three year clock.

---

[12] Subsection (2)(C) addresses situations where applicants have "failed to engage in reasonable efforts to conclude prosecution of the application" and, as a result, the PTA that would otherwise be added to the patent term is reduced. § 154(b)(2)(C).

– 12 –

In summary, the plain and unambiguous language of subparagraph (B) requires that the time devoted to an RCE serves to toll the running of the three year clock, if the RCE is filed within the three year period; subparagraph (B) does not address RCE's filed after the running of the three year period nor does it require that the time consumed by an RCE filed after the running of the three year clock be deducted from the PTA. Put simply, RCE's have no impact on the PTA after the three year deadline has passed[13] and subparagraph (B) clearly provides no basis for any RCE's to reduce PTA; instead, RCE's operate only to toll the three year guarantee deadline, if, and only if, they are filed within three years of the application filing date. Thus, the PTO erred in construing subparagraph (B) to the contrary. In doing so, the PTO, in essence, construed subparagraph (B) to punish the applicant for filing the RCE. Yet there is no basis for reading subparagraph (B) in this manner. Indeed, the PTO properly regards the RCE not as an occasion to punish the applicant, but as a "valuable tool in the patent prosecution process."[14] Nor does the PTO list an RCE as one of 11 enumerated applicant delays.[15] In sum, the PTO in this case incorrectly treats an RCE as a punitive measure, that is a measure aimed at punishing Exelixis by reducing PTA—rather than as a "valuable tool in the patent prosecution process"—where, as here, the RCE was filed after the expiration of the three year clock. Accordingly, the PTO's calculation of B delay must be set aside as "not in accordance with law" and "in excess of [its] statutory . . . authority" pursuant to 5 U.S.C. § 706(2)(A) and (C). *See also Wyeth*, 591 F.3d at 1372 (holding that because, in the context of § 154(b)(2)(C), § "154(b)'s language is clear,

---

[13] A possible exception to this may occur where an RCE in particular circumstances not present here, is properly categorized as applicant delay under § 154(b)(2)(C).

[14] Bob Stoll, *RCE Filings: The Facts*, Director's Forum: David Kappos' Public Blog, Jul. 26, 2010, http://www.uspto.gov/blog/director/entry/rce_filings_the_facts.

[15] *See* 37 C.F.R. § 1.704

– 13 –

unambiguous, and intolerant of the PTO's suggested interpretation," the Federal Circuit "accords no deference to the PTO's [interpretation]").

The PTO offers several arguments in support of its interpretation, none of which is persuasive.[16] First, the PTO argues that a proper reading of subparagraph (B) requires the insertion of the word "then" prior to the phrase "not including" that is followed by (i), (ii), and (iii). According to the PTO, inserting the word "then" at that point allows subparagraph (B) to be read so that time consumed by an RCE is deducted from the day for day remedy for the PTO's failure to meet the three year guarantee deadline. The short and dispositive answer to this argument is that the word "then" does not appear in the statute and the PTO's insertion of the word in its reading is not a construction of the provision but rather a re-writing of it. Neither courts nor agencies may change or alter the plain language and meaning of a statute because of a belief, however well founded, that the statute would be improved thereby.[17] In any event, there is no persuasive reason to conclude that the statute would be improved by changing the language as the PTO proposes. This is so because the statute and the PTO[18] do not regard RCE's as undesirable devices for which the applicant should be punished. Put differently, § 154(b) does not treat an RCE as an applicant's failure "to engage in reasonable efforts to conclude prosecution of the application" under § 154(b)(2)(C)(i). In effect, RCE's are something for

---

[16] Although the plain language of subparagraph (B) may result in the PTO awarding C delay less often, this simply does not, as the PTO argues, render subparagraph (C) superfluous.

[17] See Badaracco v. Comm'r of Internal Revenue, 464 U.S. 386, 398 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement."); see also Allergan, Inc. v. Alcon Laboratories, Inc., 324 F.3d 1322, 1346 (Fed. Cir. 2003) ("it is the function of Congress, not the courts, to shape legislation in accordance with policy goals").

[18] See Stoll, supra n. 14.

which the three year clock should be tolled, but not something that reduces the PTA. To avoid the problem presented in the present case—an RCE filed after the three year clock has expired— the PTO should aim to issue any notice of rejection before the expiration of the three year period and then, by regulation, require applicants to file RCE's in response to such notices within 30 days.

Next, the PTO argues that its construction of subparagraph (B) deserves *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), deference.[19] To be sure, when statutes, as not the case here, are unclear or ambiguous, *Skidmore* deference to the PTO's interpretation might be appropriate.[20] Again, the short answer here is that *Skidmore* deference is unwarranted, when, as here, the statute is unambiguous.

Finally, the PTO argues that its reading of subparagraph (B) avoids absurd results. Under the PTO's view, the plain language of subparagraph (B) may lead to disparate treatment of some similarly situated applicants, depending on whether the applicant files the RCE before or after the expiration of the three year period. But such disparities arise only at the margins and the

---

[19] For reasons the PTO did not make clear, the PTO explicitly declined to assert or claim *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), deference, notwithstanding the existence of a regulation—37 C.F.R. § 1.703—setting forth the very reading of subparagraph (B) that it advances here. In any event, *Chevron* deference is not appropriate because the statute is not ambiguous as written. Moreover, the regulation has the effect of altering the PTA and the patent term, which is a substantive alteration that the PTO is arguably unauthorized to make. *See* § 154(b)(3)(A) ("The Director shall prescribe regulations establishing procedures for the application for and determination of patent term adjustments under this subsection.") (emphasis added).

[20] Indeed, it appears that in the Federal Circuit, *Skidmore* deference carries more force than in the other circuits. *Compare Cathedral Candle Co. v. U.S. Intern'l Trade Com'n*, 400 F.3d 1352, 1366 (Fed. Cir. 2005) (interpreting *Skidmore* and subsequent cases to require deference "even if we might not have adopted that construction without the benefit of the agency's analysis") *with Shipbuilders Council of Am. V. U.S. Coast Guard*, 578 F.3d 234, 241 (4th Cir. 2009) ("Under the *Skidmore* standard, the court defers to an agency interpretation only if and to the extent that it is persuasive.").

– 15 –

Federal Circuit rejected similar arguments in *Wyeth*, where it explained that "[r]egardless of the potential of the statute to produce slightly different consequences for applicants in similar situations, this court does not take upon itself the role of correcting all statutory inequities." *Wyeth*, 591 F.3d at 1370. Indeed, in subparagraph (B), Congress "has put a policy in effect that this court must enforce, not criticize or correct." *See id.* It is also worth noting that the disparate treatment of applicants in these circumstances can be minimized by the PTO because the PTO controls the timing of a notice of rejection, which is a typical event that causes an applicant to file an RCE. Thus, if the PTO takes steps to issue notices of rejection well within the running of the three year clock and also requires RCE's to be filed within a fixed number of days after receipt of such notice—also within the three year period, then the time devoted to RCE's will generally count against the running of the clock and applicants will not be disparately treated.

### V.

In sum, the plain and unambiguous language of subparagraph (B) requires that the time devoted to an RCE tolls the running of the three year clock if the RCE is filed within the three year period. And, put simply, RCE's have no impact on PTA if filed after the three year deadline has passed. The PTO's arguments to the contrary are not persuasive and, accordingly, the PTO's interpretation of subparagraph (B) must be set aside as "not in accordance with law" and "in excess of [its] statutory . . . authority" pursuant to 5 U.S.C. § 706(2)(A) and (C). The proper measure of B delay in the present case is from January 15, 2011 (three years after the application filing date) to August 2, 2011 (the date the patent issued). Thus, the B delay PTA for the '622 patent is properly calculated as 199 days.

An appropriate Order will issue.

Alexandria, VA
November 1, 2012

T. S. Ellis, III
United States District Judge

– 16 –

A16

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
NOV – 6 2012
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

EXELIXIS, INC.,                              )
    Plaintiff,                           )
                                         )
    v.                                   )    Case No. 1:12cv96
                                         )
HON. DAVID J. KAPPOS, Under          )
Secretary of Commerce for Intellectual )
Property and Director of the United    )
States Patent and Trademark Office,    )
    Defendant.                           )

## ORDER

For good cause,

It is hereby **ORDERED** that the memorandum opinion (doc. 29) is **AMENDED** to insert the following footnote on page 14 at the end of the sentence that reads, "The short and dispositive answer to this argument is that the word "then" does not appear in the statute and the PTO's insertion of the word in its reading is not a construction of the provision but rather a rewriting of it":

> Footnote: Nor is the legislative history of any avail to the PTO; this history does not expressly address the question presented and is, at best, ambiguous. Fairly read, the legislative history simply repeats what subparagraph (B) clearly states. See H.R. Rep. No. 106-464, at 126 ("Any periods of time . . . consumed [by an RCE] . . . shall not be considered delay by the USPTO and shall not be counted for purposes of determining whether the patent issued within three years from the actual filing date"). In any event, legislative history, however interpreted, cannot trump clear and unambiguous statutory language. *See Mohamed v. Palestinian Authority*, 132 S.Ct. 1702, 1709 (2012) ("reliance on legislative history is unnecessary in light of the statute's unambiguous language") (internal quotation marks and citation omitted); *United States v. Gonzales*, 520 U.S. 1, 6 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history.").

In all other respects, the memorandum opinion remains unchanged.[1]

The Clerk is directed to send a copy of this Order to all counsel of record.

Alexandria, VA
November 6, 2012

T. S. Ellis, III
United States District Judge

---

[1] The footnote being added was omitted inadvertently.

A18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **EXELIXIS, INC.,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 1:12cv96** |
| | ) | |
| **HON. DAVID J. KAPPOS, Under** | ) | |
| **Secretary of Commerce for Intellectual** | ) | |
| **Property and Director of the United** | ) | |
| **States Patent and Trademark Office,** | ) | |
| Defendant. | ) | |

FILED

DEC - 3 2012

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## ORDER

On November 2, 2012, a memorandum opinion issued, setting forth the rationale for the resolution of pending motions for summary judgment. *Exelixis, Inc. v. Kappos*, No. 1:12cv96, 2012 WL 5398876 (E.D.Va. Nov. 2, 2012) (Mem. Op.). By Order dated November 6, 2012, this memorandum opinion was amended to add an inadvertently omitted footnote. *Exelixis, Inc. v. Kappos*, No. 1:12cv96 (E.D.Va. Nov., 6, 2012) (Order). It now appears that there was an inadvertent error in the layout of the diagram located on page 5 of the memorandum opinion.

For good cause,

It is hereby **ORDERED** that the memorandum opinion (doc. 29) is **CORRECTED** to replace the diagram on page 5 with the corrected diagram that follows,

A19



The Clerk is directed to send a copy of this Order to all counsel of record.

Alexandria, VA
December 3, 2012

_____

T. S. Ellis, III
United States District Judge

A20

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division



| | | |
|---|---|---|
| EXELIXIS, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:12cv96 |
| | ) | |
| HON. DAVID J. KAPPOS, Under | ) | |
| Secretary of Commerce for Intellectual | ) | |
| Property and Director of the United | ) | |
| States Patent and Trademark Office, | ) | |
| Defendant. | ) | |

## ORDER

The matter is before the Court on the parties' cross-motions for summary judgment (doc. 15 & doc. 19).

For the reasons set forth in the memorandum opinion of even date,

It is hereby **DECLARED** that:

(i) The defendant's calculation of B delay under 35 U.S.C. § 154(b)(1)(B) as set forth in 37 C.F.R. § 1.703(b) is "not in accordance with law" and "in excess of [its] statutory . . . authority" pursuant to 5 U.S.C. § 706(2)(A) and (C); and,

(ii) the patent term adjustment (PTA) for the United States Patent No. 7,989,622 is properly calculated as 482 days.

It is hereby **ORDERED** that plaintiff's motion for summary judgment (doc. 15) is **GRANTED** insofar as the proper calculation of PTA for the '622 patent is 482 days.[1]

It is further **ORDERED** that defendant's motion for a summary judgment is **DENIED**.

---

[1] Given this ruling, it is not necessary to reach the plaintiff's alternative claims.

A21

It is further **ORDERED** that the Clerk is **DIRECTED** to enter judgment pursuant to Rule 58, Fed.R.Civ.P., in accordance with this Order, and to place this matter among the ended causes.

The Clerk is further directed to send a copy of this Order to all counsel of record.

Alexandria, VA
November 1, 2012

/s/

T. S. Ellis, III
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Exelixis, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:12cv96 |
| | ) | |
| | ) | |
| David J. Kappos | ) | |
| | ) | |
| Defendant. | ) | |

### **JUDGMENT**

Pursuant to the order of this Court entered on 11/1/2012 and in accordance with Federal

Rules of Civil Procedure 58, JUDGMENT is hereby entered in favor of the plaintiff Exelixis,

Inc. and against the defendant David J. Kappos.


FERNANDO GALINDO, CLERK OF COURT


By:_____/s/_____
                    Kathy Lau
                    Deputy Clerk

Dated: 11/2/2012
Alexandria, Virginia

A23

United States Code Annotated Currentness

  Title 35. Patents (Refs & Annos)

    Part II. Patentability of Inventions and Grant of Patents (Refs & Annos)

    Chapter 14. Issue of Patent

    �142 § 154. Contents and term of patent; provisional rights

**(b) Adjustment of patent term.**--

  **(1) Patent term guarantees.**--

    **(A) Guarantee of prompt Patent and Trademark Office responses.**--Subject to the limitations under paragraph (2), if the issue of an original patent is delayed due to the failure of the Patent and Trademark Office to--

      **(i)** provide at least one of the notifications under section 132 or a notice of allowance under section 151 not later than 14 months after--

        **(I)** the date on which an application was filed under section 111(a); or

        **(II)** the date of commencement of the national stage under section 371 in an international application;

      **(ii)** respond to a reply under section 132, or to an appeal taken under section 134, within 4 months after the date on which the reply was filed or the appeal was taken;

      **(iii)** act on an application within 4 months after the date of a decision by the Patent Trial and Appeal Board under section 134 or 135 or a decision by a Federal court under section 141, 145, or 146 in a case in which allowable claims remain in the application; or

      **(iv)** issue a patent within 4 months after the date on which the issue fee was paid under section 151 and all outstanding requirements were satisfied,

        the term of the patent shall be extended 1 day for each day after the end of the period specified in clause (i), (ii), (iii), or (iv), as the case may be, until the action described in such clause is taken.

    **(B) Guarantee of no more than 3-year application pendency.**--Subject to the limitations under paragraph (2), if the issue of an original patent is delayed due to the

failure of the United States Patent and Trademark Office to issue a patent within 3 years after the actual filing date of the application under section 111(a) in the United States or, in the case of an international application, the date of commencement of the national stage under section 371 in the international application, not including--

(i) any time consumed by continued examination of the application requested by the applicant under section 132(b);

(ii) any time consumed by a proceeding under section 135(a), any time consumed by the imposition of an order under section 181, or any time consumed by appellate review by the Patent Trial and Appeal Board or by a Federal court; or

(iii) any delay in the processing of the application by the United States Patent and Trademark Office requested by the applicant except as permitted by paragraph (3)(C),

the term of the patent shall be extended 1 day for each day after the end of that 3-year period until the patent is issued.

**(C) Guarantee of adjustments for delays due to derivation proceedings, secrecy orders, and appeals.**--Subject to the limitations under paragraph (2), if the issue of an original patent is delayed due to--

(i) a proceeding under section 135(a);

(ii) the imposition of an order under section 181; or

(iii) appellate review by the Patent Trial and Appeal Board or by a Federal court in a case in which the patent was issued under a decision in the review reversing an adverse determination of patentability,

the term of the patent shall be extended 1 day for each day of the pendency of the proceeding, order, or review, as the case may be.

**(2) Limitations.**--

**(A) In general.**--To the extent that periods of delay attributable to grounds specified in paragraph (1) overlap, the period of any adjustment granted under this subsection shall not exceed the actual number of days the issuance of the patent was delayed.

**(B) Disclaimed term.**--No patent the term of which has been disclaimed beyond a specified date may be adjusted under this section beyond the expiration date specified in the disclaimer.

**(C) Reduction of period of adjustment.**--

**(i)** The period of adjustment of the term of a patent under paragraph (1) shall be reduced by a period equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution of the application.

**(ii)** With respect to adjustments to patent term made under the authority of paragraph (1)(B), an applicant shall be deemed to have failed to engage in reasonable efforts to conclude processing or examination of an application for the cumulative total of any periods of time in excess of 3 months that are taken to respond to a notice from the Office making any rejection, objection, argument, or other request, measuring such 3-month period from the date the notice was given or mailed to the applicant.

**(iii)** The Director shall prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application.

**(3) Procedures for patent term adjustment determination.**--

**(A)** The Director shall prescribe regulations establishing procedures for the application for and determination of patent term adjustments under this subsection.

**(B)** Under the procedures established under subparagraph (A), the Director shall--

**(i)** make a determination of the period of any patent term adjustment under this subsection, and shall transmit a notice of that determination no later than the date of issuance of the patent; and

**(ii)** provide the applicant one opportunity to request reconsideration of any patent term adjustment determination made by the Director.

**(C)** The Director shall reinstate all or part of the cumulative period of time of an adjustment under paragraph (2)(C) if the applicant, prior to the issuance of the patent,

makes a showing that, in spite of all due care, the applicant was unable to respond within the 3-month period, but in no case shall more than three additional months for each such response beyond the original 3-month period be reinstated.

**(D)** The Director shall proceed to grant the patent after completion of the Director's determination of a patent term adjustment under the procedures established under this subsection, notwithstanding any appeal taken by the applicant of such determination.

### (4) Appeal of patent term adjustment determination.--

**(A)** An applicant dissatisfied with the Director's decision on the applicant's request for reconsideration under paragraph (3)(B)(ii) shall have exclusive remedy by a civil action against the Director filed in the United States District Court for the Eastern District of Virginia within 180 days after the date of the Director's decision on the applicant's request for reconsideration. Chapter 7 of title 5 shall apply to such action. Any final judgment resulting in a change to the period of adjustment of the patent term shall be served on the Director, and the Director shall thereafter alter the term of the patent to reflect such change.

**(B)** The determination of a patent term adjustment under this subsection shall not be subject to appeal or challenge by a third party prior to the grant of the patent.

Code of Federal Regulations Currentness
  Title 37. Patents, Trademarks, and Copyrights
    Chapter I. United States Patent and Trademark Office, Department of Commerce (Refs & Annos)
      Subchapter A. General
        Patents
          Part 1. Rules of Practice in Patent Cases (Refs & Annos)
            ⌨ Subpart F. Adjustment and Extension of Patent Term (Refs & Annos)
              ⌨ Adjustment of Patent Term Due to Examination Delay (Refs & Annos)

**➡ § 1.702 Grounds for adjustment of patent term due to examination delay under the Patent Term Guarantee Act of 1999 (original applications, other than designs, filed on or after May 29, 2000).**

(b) Failure to issue a patent within three years of the actual filing date of the application. Subject to the provisions of 35 U.S.C. 154(b) and this subpart, the term of an original patent shall be adjusted if the issuance of the patent was delayed due to the failure of the Office to issue a patent within three years after the date on which the application was filed under 35 U.S.C. 111(a) or the national stage commenced under 35 U.S.C. 371(b) or (f) in an international application, but not including:

(1) Any time consumed by continued examination of the application under 35 U.S.C. 132(b);

(2) Any time consumed by an interference or derivation proceeding under 35 U.S.C. 135(a);

(3) Any time consumed by the imposition of a secrecy order under 35 U.S.C. 181;

(4) Any time consumed by review by the Patent Trial and Appeal Board or a Federal court; or

(5) Any delay in the processing of the application by the Office that was requested by the applicant.

Code of Federal Regulations Currentness
  Title 37. Patents, Trademarks, and Copyrights
    Chapter I. United States Patent and Trademark Office, Department of Commerce (Refs & Annos)
      Subchapter A. General
        Patents
          Part 1. Rules of Practice in Patent Cases (Refs & Annos)
            Subpart F. Adjustment and Extension of Patent Term (Refs & Annos)
              Adjustment of Patent Term Due to Examination Delay (Refs & Annos)
                ➡ **§ 1.703 Period of adjustment of patent term due to examination delay.**

(b) The period of adjustment under § 1.702(b) is the number of days, if any, in the period beginning on the day after the date that is three years after the date on which the application was filed under 35 U.S.C. 111(a) or the national stage commenced under 35 U.S.C. 371(b) or (f) in an international application and ending on the date a patent was issued, but not including the sum of the following periods:

(1) The number of days, if any, in the period beginning on the date on which a request for continued examination of the application under 35 U.S.C. 132(b) was filed and ending on the date the patent was issued;

(2)(i) The number of days, if any, in the period beginning on the date an interference or derivation proceeding was instituted to involve the application in the interference or derivation proceeding under 35 U.S.C. 135(a) and ending on the date that the interference or derivation proceeding was terminated with respect to the application; and

(ii) The number of days, if any, in the period beginning on the date prosecution in the application was suspended by the Office due to interference or derivation proceedings under 35 U.S.C. 135(a) not involving the application and ending on the date of the termination of the suspension;

(3)(i) The number of days, if any, the application was maintained in a sealed condition under 35 U.S.C. 181;

(ii) The number of days, if any, in the period beginning on the date of mailing of an examiner's answer under § 41.39 of this title in the application under secrecy order and ending on the date the secrecy order was removed;

(iii) The number of days, if any, in the period beginning on the date applicant was notified that an interference or derivation proceeding under 35 U.S.C. 135(a) would be instituted but for the secrecy order and ending on the date the secrecy order was removed; and

(iv) The number of days, if any, in the period beginning on the date of notification under § 5.3(c) of this chapter and ending on the date of mailing of the notice of allowance under 35 U.S.C. 151; and,

(4) The number of days, if any, in the period beginning on the date on which jurisdiction over the application passes to the Patent Trial and Appeal Board under § 41.35(a) of this chapter and ending on the date that jurisdiction by the Patent Trial and Appeal Board ends under § 41.35(b) of this chapter or the date of the last decision by a Federal court in an appeal under 35 U.S.C. 141 or a civil action under 35 U.S.C. 145, whichever is later.