**2013-1175; -1198**

# In The
# United States Court Of Appeals
## For The Federal Circuit

## EXELIXIS, INC.,

*Plaintiff-Appellee,*

v.

## Teresa Stanek Rea, ACTING DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,

*Defendant-Appellant.*

**Appeal from the United States District Court for the Eastern District of Virginia in case no. 12-CV-0096, Judge T. S. Ellis, III.**

---------------------------------------------------------------------------------------------------

## EXELIXIS, INC.,

*Plaintiff-Appellant,*

v.

## Teresa Stanek Rea, ACTING DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,

*Defendant-Appellee.*

**Appeal from the United States District Court for the Eastern District of Virginia in No. 12-CV-0574, Judge Leonie M. Brinkema.**

———————————

## BRIEF OF APPELLEE/CROSS-APPELLANT

———————————

J. MICHAEL HUGET
DEBORAH J. SWEDLOW
EMILY J. (ZELENOCK) TAIT
HONIGMAN MILLER SCHWARTZ AND COHN LLP
130 S. First Street, 4th Floor
Ann Arbor, MI 48104
(734) 418-4200

*Counsel for Appellee/Cross-Appellant*

TIMOTHY C. BICKHAM
HOUDA MORAD
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, D.C.  20036
(202) 429-3000

*Counsel for Appellee/Cross-Appellant*

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel of record for Plaintiff-Appellee Exelixis, Inc. certifies as follows:

1.     The full name of every party represented by us is:

Exelixis, Inc.

2.     The names of the real parties in interest represented by us are:

Not applicable.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by us are:

None.

4.     The names of all law firms and the partners or associates that appeared for the parties represented by us in the trial court, or are expected to appear in this Court, are:

HONIGMAN MILLER SCHWARTZ AND COHN LLP:
J. Michael Huget
Deborah J. Swedlow
Emily J. (Zelenock) Tait
Jonathan P. O'Brien
Heidi M. Berven
Noel E. Day

STEPTOE & JOHNSON, LLP:
Timothy C. Bickham
Houda Morad

Dated: May 20, 2013

Respectfully submitted,

*/s/ J. Michael Huget*
J. MICHAEL HUGET

i

# **TABLE OF CONTENTS**

**PAGE**

CERTIFICATE OF INTEREST ............................................................i

TABLE OF CONTENTS........................................................... ii

TABLE OF AUTHORITIES ..................................................iv

STATEMENT OF RELATED CASES ..................................ix

JURISDICTIONAL STATEMENT ........................................1

STATEMENT OF ISSUES ....................................................1

STATEMENT OF THE CASE.................................................3

STATEMENT OF FACTS ......................................................8

    A.    STATUTORY AND REGULATORY BACKGROUND...................8

        1.    Brief Overview of the Patent Examination Process ..................8

        2.    The Patent Term Adjustment Provisions of 35 U.S.C. § 154................................................................................9

        3.    PTO Regulations Implementing 35 U.S.C. § 154 ...................13

    B.    FACTUAL BACKGROUND RELATED TO EXELIXIS'S PATENTS ...............................................................14

        1.    Key Facts from the File History of the '622 Patent (*Exelixis I*) ...............................................................14

        2.    Key Facts from the File History of the '436 Patent (*Exelixis II*)...............................................................17

SUMMARY OF ARGUMENT .............................................19

ARGUMENT ..........................................................................................25

    A.    STANDARD OF REVIEW .................................................25

    B.    THE PTO'S INTERPRETATION IS NOT ENTITLED TO DEFERENCE ...................................................................26

    C.    EXELIXIS IS ENTITLED TO PTA FOR EACH DAY AFTER THE 3-YEAR DEADLINE UNTIL THE PATENT ISSUED ...........30

        1.    The Statute's Clear and Unambiguous Language Supports Exelixis's Interpretation .............................................30

        2.    Both the *Exelixis I* and *Exelixis II* Courts Found that an RCE Filed within the 3-Year Deadline *Tolls* the Deadline .................................................................................36

        3.    The PTO's Defense of its Interpretation is Not Persuasive ..................................................................................38

    D.    ALTERNATIVELY, EXELIXIS SHOULD BE AWARDED PTA FOR THE PTO'S DELAY BETWEEN THE NOTICE OF ALLOWANCE AND PATENT ISSUANCE ....................................45

CONCLUSION .....................................................................................52

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Almendarez-Torres v. United States*,
   523 U.S. 224 (1998)......................................................................41

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975)......................................................................26

*Candle Corp. v. United States Int'l Trade Comm'n*,
   374 F.3d 1087 (Fed. Cir. 2004) ............................................... 27-28

*Cathedral Candle Co. v. United States ITC*,
   400 F.3d 1352 (Fed. Cir. 2005) ............................................29, 30

*Chevron v. Natural Res. Def. Council, Inc.*,
   467 U.S. 837 (1984)...............................................20, 27, 28, 29

*Exelixis v. Kappos (I)*,
   __ F. Supp. 2d __, No. 12-0096, 2012 U.S. Dist. LEXIS 157762
   (E.D. Va. Nov. 1, 2012)....................................................*passim*

*Exelixis v. Kappos (II)*,
   __ F. Supp. 2d __, No. 2-0574,
   2013 U.S. Dist. LEXIS 11173 (E.D. Va. Jan. 28, 2013)................... *passim*

*FDA v. Brown & Williamson Tobacco Corp.*,
   529 U.S. 120 (2000)...............................................................22, 27

*Garcia v. United States*,
   469 U.S. 70 (1984)......................................................................27

*Glaxo Operations UK Limited v. Quigg*,
   894 F.2d 392 (Fed. Cir. 1990) .................................................26

*Godwin v. United States*,
   338 F.3d 1374 (Fed. Cir. 2003) ................................................49

*Griffin v. Oceanic Contractors, Inc.*,
     458 U.S. 564 (1982)............................................................27

*Johns Hopkins Univ. v. CellPro, Inc.*,
     152 F.3d 1342 (Fed. Cir. 1998) ...................................25

*Landreth Timber Co. v. Landreth*,
     471 U.S. 681 (1985)............................................................26

*Madison Galleries, Ltd. v. United States*,
     870 F.2d 627 (Fed. Cir. 1989) .......................................26

*Mathews v. Diaz*,
     426 U.S. 67, 96 S. Ct. 1883 (1976) ...........................43

*Merck & Co., Inc. v. Kessler*,
     80 F.3d 1543 (Fed. Cir. 1996) .......................................28

*Nat'l Org. of Veterans' Advocates v. Sec'y of Veterans Affairs*,
     314 F.3d 1372 (Fed. Cir. 2003).....................................51

*Novartis v. Kappos*,
     __ F. Supp. 2d __, No. 10-1138,
     2012 U.S. Dist. LEXIS 163237 (D.D.C. November 15, 2012)..............6, 13

*PhotoCure ASA v. Kappos*,
     603 F.3d 1372 (Fed. Cir. 2010) ...........................22, 30

*Reese v. United States*,
     24 F.3d 228 (Fed. Cir. 1994) .......................................41

*Skidmore v. Swift & Co.*,
     323 U.S. 134 (1944)......................................................*passim*

*Timex V.I., Inc. v. United States*,
     157 F.3d 879 (Fed. Cir. 1998) .......................................28

*Transactive Corp. v. United States*,
     91 F.3d 232 (D.C. Cir. 1996) .......................................51

*U.S. R.R. Retirement Bd. v. Fritz*,
    449 U.S. 166, 101 S. Ct. 453 (1980) ............................................................43

*United States v. Locke*,
    471 U.S. 84, 105 S. Ct. 1785 (1985) ............................................................43

*United States v. Ron Pair Enterprises*,
    489 U.S. 235 (1989)......................................................................................27

*Wyeth v. Kappos*,
    591 F.3d 1364 (Fed. Cir. 2010) ............................................................*passim*

**Statutes:**

5 U.S.C. § 706(2)(A)....................................................................................3, 6, 44

5 U.S.C. § 706(2)(C)....................................................................................3, 6, 44

35 U.S.C. § 111(a) .................................................................................................8

35 U.S.C. § 132(a) ............................................................................................8, 9

35 U.S.C. § 132(b) ..............................................................................................10

35 U.S.C. § 135......................................................................................................8

35 U.S.C. § 151................................................................................................8, 47

35 U.S.C. § 154................................................................................................9, 13

35 U.S.C. § 154(b) ........................................................................................12, 37

35 U.S.C. § 154(b)(1)(A) ........................................................................10, 12, 32

35 U.S.C. § 154(b)(1)(B) .............................................................................*passim*

35 U.S.C. § 154(b)(1)(B)(i) ....................................................................10, 31, 34

35 U.S.C. § 154(b)(1)(B)(ii) ................................................................................39

35 U.S.C. § 154(b)(1)(B)(iii) ........................................................................40, 41

35 U.S.C. § 154(b)(1)(C) .............................................................................*passim*

35 U.S.C. § 154(b)(1)(C)(i) ...................................................................48

35 U.S.C. § 154(b)(1)(C)(ii) ..................................................................48

35 U.S.C. § 154(b)(1)(C)(iii) ...........................................................39, 48

35 U.S.C. § 154(b)(2)(A) ......................................................................44

35 U.S.C. § 154(b)(2)(C) ................................................................*passim*

35 U.S.C. § 154(b)(2)(C)(i) ..............................................12, 13, 33, 49

35 U.S.C. § 154(b)(2)(C)(ii) ....................................................12, 33, 49

35 U.S.C. § 154(b)(2)(C)(iii) ..............................................12, 33, 34, 49

35 U.S.C. § 154(b)(3)(B)(ii) .....................................................................5

35 U.S.C. § 154(b)(4)(A) ..........................................................................5

**Rule:**

Fed. Cir. Local Rule 28(b) ........................................................................3

**Regulations:**

37 C.F.R § 1.702 ...................................................................................13

37 C.F.R. § 1.114 ....................................................................................9

37 C.F.R. § 1.702(b) .............................................................................13

37 C.F.R. § 1.703 ............................................................................13, 35

37 C.F.R. § 1.703(a) ..............................................................................49

37 C.F.R. § 1.703(b) ........................................................................*passim*

37 C.F.R. § 1.703(b)(1) ....................................................................13, 51

37 C.F.R. § 1.703(b)(4) ..........................................................................51

37 C.F.R. § 1.703(c) ..............................................................................49

37 C.F.R. § 1.703(d) ...................................................................49

37 C.F.R. § 1.703(e) ...................................................................49

37 C.F.R. § 1.704 ......................................................................13

37 C.F.R. § 1.704(a)................................................... 13, 34, 48, 49

37 C.F.R. § 1.704(c)(1)-(11) ...................................4, 20, 13, 34

37 C.F.R. § 1.705 ......................................................................13

**Other Authorities:**

65 Fed. Reg. 56,366, 56,377 ......................................................49

Department of Commerce, Patent and Trademark Office,
Changes to Patent Practice and Procedure,
     62 Fed. Reg. 53,132,53,144-45 (Oct. 10, 1997)............................47

Director's Forum: A Blog from USPTO's Leadership, *available at*
     www.uspto.gov/blog/director/entry/rce_filings_the_facts............35

Director's Forum: A Blog from USPTO's Leadership, *available at:*
     http://www.uspto.gov/blog/director/entry/rce_filings_the_facts ...................9

H.R. Rep. No. 106-464 (Nov. 9, 1999) (Conf. Rep.) ....................... 49-50

Joint Explanatory Statement of the Committee of Conference
included with the statement of Rep. Tauzin,
     145 Cong. Rec. H11769, 11802 (Nov. 9, 1999)............................32

Manual of Patent Examining Procedure, Chapter 700,
"Examination of Applications"
     (8th ed., Rev. 8, July 2010)............................................47

Pub. L. No. 103-465, Dec. 8, 1994, 108 Stat. 4809................................10

Pub. L. No. 106-113, 113 Stat. 1536 .......................................................9

Statistics Related to RCEs, *available at*
     http://www.uspto.gov/patents/init_events/rce_outreach.jsp,
     Slide #3 – "RCE Filings per Application .......................................9

## <u>STATEMENT OF RELATED CASES</u>

The present appeal arises from two district court cases that reached contrary results.  *See Exelixis v. Kappos*, __ F. Supp. 2d __, No. 12-0096, 2012 U.S. Dist. LEXIS 157762 (E.D. Va. Nov. 1, 2012) (*Exelixis I*) (ruling in favor of Exelixis); *Exelixis v. Kappos*, __ F. Supp. 2d __, No. 2-0574, 2013 U.S. Dist. LEXIS 11173 (E.D. Va. Jan. 28, 2013) (*Exelixis II*) (ruling in favor of the PTO). In both of those cases, Exelixis argued that the Acting Director of the United States Patent and Trademark Office ("PTO") committed two significant errors in interpreting 35 U.S.C. § 154, which caused the PTO to improperly reduce the patent term adjustment ("PTA") for Exelixis's patents.  The PTO denied that it committed these errors and argued that its statutory interpretation was entitled to deference.  These two issues of statutory interpretation are now before the Court in this consolidated appeal.  (Order, April 18, 2013, Doc. #27).

Another related case that is currently pending before this Court is *Novartis AG v. Rea*, Nos. 2013-1160, 2013-1179 (Fed. Cir.).  The *Novartis* case involves the same issue raised by the PTO in its opening brief, which is referred to in this brief as "Issue #1."  The district court in the *Novartis* action followed the reasoning of the court in *Exelixis I*, thus ruling in favor of Novartis on Issue #1 and declining to rule on what is referred to in this brief as "Issue #2."  *Novartis AG v. Kappos*, No. 10-1138 (D.D.C.).  The *Novartis* case also involves several other questions that are not related to the present appeal.

Finally, there are multiple district court cases currently pending in the District Court for the Eastern District of Virginia and the District Court for the District of Columbia that involve the same issues before the Court. Those cases will be directly affected by this Court's decision in the pending appeal.

## JURISDICTIONAL STATEMENT

Exelixis agrees with the Jurisdictional Statement contained in the PTO's opening brief. (PTO Opening Br., Doc. 22, at p. 1). The PTO's Opening Brief only addressed the first of the two issues on appeal, for which the PTO is the appellant. Therefore, Exelixis notes that the Jurisdictional Statement also applies to the second issue, for which Exelixis is the appellant.

## STATEMENT OF ISSUES

Both issues on appeal are questions of statutory interpretation. The PTO characterizes the first issue as "whether this Court should uphold the PTO's longstanding practice of excluding any time consumed by an applicant's request for continued examination ('RCE') from the calculation of patent term adjustment under subsection 154(b)(1)(B) regardless of when the applicant filed the RCE." (PTO Opening Br., Doc. 22 at p. 2). Exelixis respectfully disagrees with the PTO's characterization of the issue. The starting point is not whether the Court should defer to the PTO's interpretation, but whether the statute authorizes the PTO to act as it has.

Specifically, Issue #1 asks whether the patent term adjustment ("PTA") provisions of the Patent Statute authorize the PTO to reduce Exelixis's PTA for "time consumed by continued examination" based on Exelixis's requests for continued examination ("RCE"), which were not even filed until after the PTO failed to meet the 3-year patent application pendency deadline provided for in 35

U.S.C. § 154(b)(1)(B).  Exelixis contends that the statute does not authorize the PTO to do so because, *inter alia*, (i) the sole statutory reference to "time consumed by continued examination" appears in § 154(b)(1)(B), which simply provides that such time does not count towards the 3-year deadline for patent application pendency, and (ii) § 154(b)(2)(C) expressly provides that PTA is to be reduced "by a period equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution of the application" (hereafter referred to as "Applicant Delay") – and the USPTO agrees that an RCE is *not* Applicant Delay.  Thus, the PTO's interpretation cannot be reconciled with the clear and unambiguous language of the statute.

If, however, the Court rules in the PTO's favor on the first issue, Issue #2 asks whether the PTO erred by automatically counting *all* time after the filing of an RCE as "time consumed by continued examination," including the time that it took the PTO to issue a patent after it issued the Notice of Allowance.  Exelixis contends that the statute does not authorize the PTO to treat an RCE as an event that completely terminates further accrual of B Delay.  No "continued examination" actually took place after the PTO issued the Notices of Allowance for the two Exelixis patents at issue here.  Accordingly, the PTO's categorical treatment of this time as "time consumed by continued examination" is not in accordance with the law.

## **STATEMENT OF THE CASE**

Federal Circuit Rule 28(b) provides that the appellee's statement of the case and statement of the facts "must be limited to specific areas of disagreement with those of the appellant." However, in the present appeal, Exelixis is both an appellee (with respect to Issue #1) and an appellant (with respect to Issue #2). Accordingly, Exelixis provides a comprehensive statement of the case and statement of the facts below. To do otherwise would present an incomplete picture of the case posture and relevant facts.

Exelixis expressly notes that it disagrees with the PTO's statement of the case insofar as it reflects the PTO's characterization of the key statutory language in dispute and Exelixis's arguments concerning the same. (PTO Opening Br., Doc. 22, p. 3-4). For example, the PTO says "*the statute provides that* certain types of delay, including time consumed by a request for continued examination, are to be excluded from [the PTA] calculation." (PTO Opening Br., Doc. 22, p. 3 (emphasis added)). However, whether the statute does in fact provide for this is the crux of the parties' dispute. Exelixis contends that the statute does *not* authorize the PTO to reduce PTA for time consumed by an RCE and thus the PTO's interpretation must be set aside as "not in accordance with the law" and "in excess of its statutory…authority" pursuant to 5 U.S.C. § 706(2)(A) and (C).

3

Specifically, Exelixis argues that the clear and unambiguous language of 35 U.S.C. § 154(b)(1)(B) instructs that time consumed by certain events – including "time consumed by continued examination" will not count towards the 3-year application pendency period that is "guaranteed" by this section. In other words, if an RCE is filed within the 3-year period, the time consumed by it operates to toll the 3-year deadline. Section § 154(b)(1)(B), by its plain terms, does not address the situation where an RCE is filed after the 3-year deadline has already passed. Moreover, § 154(b)(1)(B) does not broadly authorize the PTO to reduce an applicant's PTA for time consumed by an RCE. In fact, the statute separately instructs that PTA is to be reduced where an applicant "failed to engage in reasonable efforts to conclude prosecution of the application." 35 U.S.C. § 154(b)(2)(C) (hereinafter referred to as "Applicant Delay"). The PTO's own regulations do not regard an RCE to be an example of Applicant Delay. 37 C.F.R. § 1.704(c)(1)-(11). Accordingly, the PTO significantly overstepped its statutory authority when it reduced Exelixis's PTA for "time consumed by continued examination" based on RCEs that were not even filed until after the 3-year date had passed.

Even if this Court defers to the PTO on this first issue, Exelixis contends that the PTO has erred by reducing Exelixis's PTA for a time *greater than* what was actually "consumed by" continued examination. Indeed, the PTO's regulation

4

automatically reduces an applicant's PTA for *all* time after the filing of an RCE, without consideration of whether any continued examination actually took place during that time period. 37 C.F.R. § 1.703(b) (stating the PTO's position that an applicant's PTA does not include "[t]he number of days…in the period beginning on the date on which a request for continued examination…was filed and ending on the date the patent was issued[.]"). As a result, the PTO improperly reduced Exelixis's PTA for all time following its RCE submissions, including the administrative delay that occurred after the PTO issued the Notice of Allowance until the PTO issued the patent.

Exelixis first challenged the PTO's PTA calculations by timely filing petitions for reconsideration pursuant to 35 U.S.C. § 154(b)(3)(B)(ii). After the PTO denied Exelixis's petitions, Exelixis filed two separate district court actions in the Eastern District of Virginia, as provided for in 35 U.S.C. § 154(b)(4)(A).

The district court in *Exelixis I* ruled in favor of Exelixis on the first issue and thus did not reach the second. *Exelixis v. Kappos*, __ F. Supp. 2d __, No. 12-0096, 2012 U.S. Dist. LEXIS 157762 (E.D. Va. Nov. 1, 2012); A1-22. The *Exelixis I* court explained that the statute only addresses RCEs in the context of tolling the 3-year deadline and does *not* authorize the PTO to reduce PTA for time consumed by RCEs:

In summary, the plain and unambiguous language of subparagraph [§ 154(b)(1)] (B) requires that the time devoted to an RCE serves to toll the running of the three year clock, if the RCE is filed within the three-year period; subparagraph (B) does not address RCE's filed after the running of the three year period nor does it require that the time consumed by an RCE filed after the running of the three year clock be deducted from the PTA. Simply put, RCEs have no impact on the PTA after the three year deadline has passed and subparagraph (B) clearly provides no basis for any RCEs to reduce PTA; instead, RCE's operate only to toll the three year guaranteed deadline, if, and only if, they are filed within three years of the application filing date. Thus, the PTO erred in construing subparagraph (B) to the contrary.

A13.

Thus, the *Exelixis I* court held that the PTO's interpretation (and resulting PTA calculation) must be "set aside as 'not in accordance with the law' and 'in excess of [its] statutory authority' pursuant to 5 U.S.C. § 706(2)(A) and (C)." A13, A16. *See also Novartis v. Kappos*, __ F. Supp. 2d __, No. 10-1138, 2012 U.S. Dist. LEXIS 163237, at *35 (D.D.C. November 15, 2012) (adopting the "well-reasoned opinion" of *Exelixis I* and concluding that "the PTO's interpretation is contrary to the plain and unambiguous language of § 154(b)(1)(B), and…contravenes the structure and purpose of the statute.").

In contrast, the district court in *Exelixis II* ruled in favor of the PTO on both issues. *Exelixis v. Kappos*, __ F. Supp. 2d __, No. 2-0574, 2013 U.S. Dist. LEXIS 11173 (E.D. Va. Jan. 28, 2013); A24-52. Importantly, however, with respect to the first issue, the *Exelixis II* court agreed with the *Exelixis I* court that

"the unambiguous text of 35 U.S.C. § 154(b)(1)(B) *clearly provides that the filing of an RCE tolls the guaranteed three-year time period* in which the PTO is expected to resolve a patent application when the RCE is filed <u>before</u> the expiration of that three-year period."  A36-37 (italics added; underline in original).  However, the *Exelixis II* court found that the statute is "silent as to the effect of RCEs filed after the three-year period on PTA[.]" A38 n.10, A39.  Thus, the *Exelixis II* court deferred to the PTO's interpretation and found that it was reasonable for the PTO to reduce Exelixis's PTA for "time consumed by an RCE" that was filed after the 3-year deadline.  A44.  The *Exelixis II* court also upheld the PTO's decision to categorically count all time after an RCE filing as "time consumed by continued examination," including the time that passes after the Notice of Allowance issues until the patent issues.  The court reasoned, "all proceedings following the RCE filing – including the otherwise routine processing that directly precedes patent issuance – are 'by virtue of the continued examination given to the application,' and are ineligible for B-delay PTA."  A50.

On the parties' joint motions, this Court consolidated the *Exelixis I* and *II* appeals.  (Order, dated April 18, 2013, Doc. 27).

## STATEMENT OF FACTS

**A.    STATUTORY AND REGULATORY BACKGROUND**

**1.    Brief Overview of the Patent Examination Process**

The patent examination process begins when the patent application is filed at the PTO.  35 U.S.C. § 111(a).  A patent examiner then examines the application to determine whether the requirements for patentability have been met and if the applicant is entitled to a patent.  35 U.S.C. § 135.  During the course of examination, the patent examiner may reject one or more claims as not allowable. The patent examiner will send the applicant an Office Action to provide notice of such rejection(s) and the examiner's reason(s) for them.  35 U.S.C. § 132(a).  The applicant may respond to the examiner's arguments and request further clarification.  *Id.*  If the examiner is convinced of the applicant's arguments and determines that the applicant is entitled to a patent, the PTO issues a Notice of Allowance to indicate that examination has concluded and the applicant is entitled to a patent.  35 U.S.C. § 151.  Upon receipt of the Notice of Allowance, the applicant must only pay a fee and the PTO will issue a patent in due course.  If, however, the examiner is unconvinced by the applicant's arguments, the examiner will issue a Final Office Action rejecting the claims.

A "Final" Office Action need not be the end of prosecution, however.  35 U.S.C. § 132(a).  A patent applicant may submit an RCE for "continued examination" before the PTO notwithstanding the examiner's belief that no

additional examination is warranted. *Id.* An RCE must be accompanied by a submission, such as an amendment or new evidence of patentability. 37 C.F.R. § 1.114. This ensures that RCEs are not simply used to delay prosecution, but rather serve an important role in the examination process.

The PTO recognizes that RCEs are "a valuable tool in the patent prosecution process." *See* Director's Forum: A Blog from USPTO's Leadership, *available at*: http://www.uspto.gov/blog/director/entry/rce_filings_the_facts. However, RCEs are not utilized in the vast majority of applications. In fact, the PTO has assembled statistics on RCEs and found that a "substantial majority" of the applications "did not include an RCE." *See* Statistics Related to RCEs, *available at* http://www.uspto.gov/patents/init_events/rce_outreach.jsp, Slide #3 – "RCE Filings per Application. Indeed, less than 20% of such applications included a single RCE and only about 5 % included more than one RCE. *Id.*

## 2.    The Patent Term Adjustment Provisions of 35 U.S.C. § 154

Until relatively recently, the term of a U.S. patent expired 17 years after the issue date. 35 U.S.C. § 154 (1992). In the mid-1990s, Congress amended the Patent Act to provide that a U.S. patent expires 20 years after the patent application filing date. *See* Pub. L. No. 103-465, Dec. 8, 1994, 108 Stat. 4809. Under the "new" regime, the 20-year term begins to run before a patent issues, which means that PTO delay during the examination process could reduce the term of the

9

applicant's patent.  As a result, Congress passed the American Inventors Protection Act of 1999 to compensate patent applicants with day-for-day patent term adjustment when certain delays occur during examination.  *See* Pub. L. No. 106-113, 113 Stat. 1536.

The Patent Statute's PTA provisions provide a number of "guarantees" to the patent applicant; if any of those guarantees are not met, the applicant is entitled to day-for-day PTA to compensate the applicant for the resulting delay. 35 U.S.C. § 154(b)(1)(A)-(C).  For example, the "Guarantee of Prompt Patent and Trademark Office Responses" awards PTA to the applicant if the PTO fails to carry out certain acts within defined deadlines.  35 U.S.C. § 154(b)(1)(**A**)("**A Delay**").  Here, there is no dispute concerning the PTO's calculation of A Delay for either of Exelixis's patents.

A second "guarantee" that the statute gives the patent applicant is the "Guarantee of No More than 3-Year Application Pendency."   35 U.S.C. 154(b)(1)(**B**) ("**B Delay**").  This statutory section thus "guarantees" that the PTO will issue a patent "within 3 years" of the filing date, "not including," *inter alia*, "any time consumed by continued examination of the application requested by the applicant under section 132(b)."  35 U.S.C. § 154(b)(1)(B)(i).  Thus, Exelixis contends that the statute clearly and unambiguously instructs that, if an applicant submits an RCE within 3 years of the filing date, it tolls the 3-year deadline – *i.e.*,

10

the "time consumed by continued examination" will not count towards the 3-year deadline that the PTO must meet. Exelixis's view is that the statute does not vest the PTO with the authority to reduce PTA for time consumed by an RCE; rather, an RCE operates only to toll the 3-year guaranteed deadline if it is filed within 3 years of the application filing date. In contrast, the PTO contends that this statutory section authorizes the PTO to *reduce PTA* for "time consumed by continued examination," whether the RCE is filed before or even after the 3-year "guaranteed" deadline.

The *Exelixis I* court agreed with Exelixis and found that the PTO's interpretation must be set aside as inconsistent with the clear and unambiguous language of the statute. A1-16. The *Exelixis II* court agreed with Exelixis that the "unambiguous text" of 154(b)(1)(B) "clearly" provides that an RCE filed before the expiration of the 3-year deadline "tolls the guaranteed three-year time period" in which the PTO is expected to issue a patent. A36-37. Notwithstanding this finding, and its related finding that the statute was silent on RCEs filed after the 3-year deadline, the *Exelixis II* court applied *Skidmore*[1] deference and concluded that the PTO's interpretation was "a reasonable interpretation of the statute." A39.

---

[1] *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *Skidmore* deference is discussed in greater detail later in this brief.

The third "guarantee" given to the patent applicant is the "Guarantee or Adjustments for Delays Due to Interferences, Secrecy Orders, and Appeals."  35 U.S.C. § 154(b)(1)(**C**)("**C Delay"**).  In the present case, the parties agree that there is no C Delay for either of Exelixis's patents.

Each of the "Guarantees" laid out in paragraph (1) of § 154(b) are "*Subject to the limitations of paragraph (2)….*" 35 U.S.C. § 154(b)(1)(A)-(C) (emphasis added).  One of the limitations in paragraph (2) is called "Reduction of period of adjustment."  35 U.S.C. § 154(b)(2)(C).  As the name suggests, this section specifically defines the circumstances that warrant "reduction" of PTA, providing that an applicant's PTA is to be reduced by "a period equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution of the application."  35 U.S.C. § 154(b)(2)(**C**)(i) ("**C Reduction**" or "**Applicant Delay**").  Critically, the statute does not define an RCE as a type of Applicant Delay; in fact, the only example of Applicant Delay described in the statute occurs when an applicant takes more than three months to respond to "a notice from the Office making any rejection, objection, argument, or other request[.]"  35 U.S.C. § 154(b)(2)(C)(ii).  The statute then states that the PTO may "prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application."  35 U.S.C. § 154(b)(2)(C)(iii).

12

### 3.    PTO Regulations Implementing 35 U.S.C. § 154

The PTO issued several regulations to implement 35 U.S.C. § 154, which are codified in 37 C.F.R §§ 1.702-705.  At issue in the present case is 37 C.F.R. § 1.703, which sets forth the PTO's interpretation of § 154(b)(1)(B), the "B Delay" provision.  Section 1.703 provides that an applicant's B Delay PTA does "not include "[t]he number of days…in the period beginning on the date on which a request for continued examination…was filed and ending on the date the patent was issued[.]"  37 C.F.R. § 1.703(b)(1).[2]

In addition, the PTO promulgated regulations establishing the circumstances that constitute "a failure of the applicant to engage in reasonable efforts to conclude processing or examination of an application" under 35 U.S.C. § 154(b)(2)(C)(i).  Notably, the PTO enumerates 11 different types of Applicant Delay, but *not* an RCE.  37 C.F.R. § 1.704(a), (c)(1)-(11).  This is not only consistent with the PTO's view that an RCE is a "valuable tool in the patent prosecution process," but also the fact that RCEs often lead to the prompt

---

[2]  As the *Novartis* court noted, § 1.703 appears to be in "conflict" with the PTO regulation that immediately precedes it, *i.e.* 37 C.F.R. § 1.702(b). As the *Novartis* court found, § 1.702(b) adopts the plain meaning of § 154(b)(1)(B) by providing that the 3-year deadline will be tolled when an RCE is filed within 3 years of the filing date. In contrast, § 1.703 reduces PTA for "time consumed by an RCE," whether the RCE is filed before or after the 3-year deadline.  *See Novartis v. Kappos*, __ F. Supp. 2d __, No. 10-1138, 2012 U.S. Dist. LEXIS 163237, at *35-37 (D.D.C. November 15, 2012).

resolution of prosecution – which is exactly what happened with Exelixis's RCEs.  Consistent with this, in the district court cases below, the PTO did not argue that an RCE was Applicant Delay as defined in § 154(b)(2)(C).

## B.    FACTUAL BACKGROUND RELATED TO EXELIXIS'S PATENTS

Patent term adjustment is particularly important for pharmaceutical patents because of the lengthy development and regulatory approval periods involved in bringing a pharmaceutical to market.  These periods inevitably consume a portion of the patent term.  Two such patents are Exelixis's U.S. Patent No. 7,989,622 patent ("the '622 patent"), entitled "Phosphatidylinositol 3-kinase inhibitors and methods of their use" and U.S. Patent No. 8,067,436 ("the '436 patent"), entitled "C-Met modulators and methods of use."  A297; A815.  Exelixis's patented compounds and methods are useful in the treatment of diseases such as cancer. *Id.*

### 1.    Key Facts from the File History of the '622 Patent (*Exelixis I*)

On January 15, 2008, Exelixis applied for the '622 patent by filing Application No. 11/988,862 with the PTO.  A575.  Thus, January 15, 2011 was the PTO's 3-year deadline to issue a patent under 35 U.S.C. § 154(b)(1)(B).  The PTO did not meet this deadline. Exelixis did not submit an RCE until after the 3-year date passed.  A572-574.

Rather, on February 22, 2010, approximately 25 months after the patent application filing date, the PTO mailed a First Office Action (a Restriction/Election Requirement).  A578-589.  Exelixis responded on July 22, 2010.  A590-640.  On September 27, 2010, the PTO mailed a Non-Final Action, and Exelixis responded on December 23, 2010.  A709-725; A733-810.  On March 9, 2011, the PTO mailed a Final Rejection.  A642-652.  On April 1, 2011, Exelixis provided the Examiner with a proposed set of amended claims by telephone facsimile.  On April 6, 2011, Exelixis had an interview with the Examiner regarding the proposed set of amended claims.  A813.  In the Examiner's Interview Summary dated April 8, 2011, the Examiner indicated "that the limitations in the amended claims appeared to overcome the previously applied prior art" but that "the species recited in the amended claims would require further examination to determine if they are allowable."  A813.

As a result of the Examiner's comments in the Interview Summary, Exelixis filed an RCE on April 11, 2011.  A653-665.  The amended claim set that Exelixis filed along with the RCE was identical to the amended claim set that was sent to the Examiner on April 1, 2011.  In connection with the RCE, Exelixis noted "[t]he claim amendments are made in the interest of expediting prosecution."  A660.

Sixteen days later, on April 27, 2011, the PTO issued the Notice of Allowance and Fees Due.   A666.   The Notice of Allowance stated: "THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE OF A PATENT.   PROSECUTION ON THE MERITS HAS CLOSED."   A666.   The very next day, Exelixis paid the issue fee, satisfying all outstanding requirements for issuance of the patent.   A572.   The '622 patent subsequently issued on August 2, 2011, over three months later.   A297.

The PTO calculated 368 days of total PTA for the '622 patent, based on its determination of 344 days of "A Delay" and 85 days of "B Delay," less 61 days of Applicant Delay (*i.e.* "C Reduction") for the '622 patent.   A689, A707.

The parties' dispute in the present case centers on the PTO's calculation of B Delay.   The 85 days awarded by the PTO corresponds to the 85 days that passed after the 3-year deadline on January 15, 2011 until Exelixis filed the RCE on April 11, 2011.   The PTO's interpretation thus treats Exelixis's RCE as an event that completely terminates any additional accrual of B Delay.   Exelixis contends that the PTO erred in its calculation of B Delay by not awarding PTA for the complete B Delay period, namely the complete number of days that passed after the 3-year deadline on January 15, 2011 until the patent issued on August 2, 2011.   Thus, Exelixis contends it is entitled to 199 days total of B Delay for the '622 patent.

Alternatively, Exelixis contends that the PTO erred by not awarding PTA for the PTO's own delay in issuing the '622 patent after issuing the Notice of Allowance. No "continued examination" took place after the issuance of the Notice of Allowance; the time that it took the PTO to issue the patent after issuing the Notice of Allowance is solely attributable to the PTO. Thus, Exelixis contends it is entitled to at least 183 days total of B Delay for the '622 patent, which corresponds to the 85 days awarded by the PTO plus the additional 98 days that passed after the PTO issued the Notice of Allowance until the patent issued.

### 2.  Key Facts from the File History of the '436 Patent (*Exelixis II*)

On May 24, 2007, Exelixis applied for the '436 patent by filing Application No. 11/753,514 with the PTO. A815. Thus, May 24, 2010 was the PTO's 3-year deadline to issue a patent under 35 U.S.C. § 154(b)(1)(B). The PTO did not meet this deadline. Exelixis did not submit an RCE until after the 3-year date passed. A820-823.

Rather, on July 20, 2010, more than 3 years after the filing date, the PTO mailed a Non-Final Office Action. A824-A834. Exelixis responded on November 11, 2010. A864-875. On December 23, 2010, the PTO mailed a Final Rejection. A876-883. On March 23, 2011, Exelixis filed an Amendment after Final Rejection. A936-946. On June 16, 2011, the Examiner issued an Advisory Action, indicating that claims directed to lung, ovarian, and prostate carcinoma

17

were supported by specification and the claims.  A884-885.  One week later, on June 23, 2011, Exelixis conducted an interview with the Examiner to discuss proposed claim amendments to replace "lung cancer, ovarian carcinoma, and prostate carcinoma" as provided in the Advisory Action with "lung, ovarian, and prostate cancer."  On that same day, Exelixis filed an RCE, along with claims that were identical to the proposed claims that Exelixis discussed with the Examiner during the Interview.  A889-895.  In connection with its RCE filing, Exelixis noted "[t]he claim amendments are made in the interest of expediting prosecution." A892.

On July 1, 2011 – eight days after the RCE was filed – the PTO mailed a Notice of Allowance and Fees due.  A896.  The Notice of Allowance stated: "THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE OF A PATENT.  PROSECUTION ON THE MERITS HAS CLOSED."  A896.  On September 30, 2011, Exelixis paid the issue fee, satisfying all outstanding requirements for issuance of a patent.  A820.  The '436 patent subsequently issued on November 29, 2011, nearly two months later. A815.

The PTO calculated 949 days of total PTA for the '436 patent, based on its determination that there was 726 days of "A Delay," 394 days of "B Delay," 57 days of overlap between "A Delay" and "B Delay," and 114 days of Applicant

Delay. As with the '622 patent, Exelixis contends that the PTO erred in its calculation of B Delay for the '436 patent. The 394 days awarded by the PTO corresponds the 394 days that passed after the 3-year deadline on May 24, 2010 until Exelixis filed the RCE on June 23, 2011, at which point the PTO terminated all further accrual of B Delay. Exelixis contends that it is entitled to PTA for the complete B Delay period, namely the total number of days that passed after the 3-year deadline on May 24, 2010 until the patent issued on November 29, 2011. Thus, Exelixis contends it is entitled to 554 days of B Delay for the '622 patent.

Alternatively, Exelixis contends that the PTO erred by not at least awarding PTA for the PTO's own delay after transmitting the Notice of Allowance until the patent issued because no "continued examination" took place during that time. Thus, Exelixis contends it is entitled to at least 546 days total of B Delay for the '436 patent, which corresponds to the 394 days awarded by the PTO plus the additional 152 days that it took the PTO to issue the '436 patent after issuing the Notice of Allowance.

## SUMMARY OF ARGUMENT

The PTO incorrectly interprets 35 U.S.C. § 154(b)(1)(B) to mean that it may *reduce an applicant's PTA* for "time consumed by continued examination" even where, as here, the applicant's RCE was filed after the 3-year deadline guaranteed by this section had already passed. In fact, § 154(b)(1)(B) does not authorize the

19

PTO to reduce an applicant's PTA for "time consumed by continued examination," but rather instructs that such time is "not includ[ed]" in the calculation of the 3-year deadline for patent application pendency that is guaranteed by that section of the statute.   In other words, if an RCE is filed within 3 years of the patent application filing date, the time consumed by the RCE tolls the 3-year deadline for patent application pendency that is guaranteed by § 154(b)(1)(B).

Exelixis's RCEs were not submitted until *after* the PTO had already failed to meet the 3-year deadline, thus triggering Exelixis's entitlement to B Delay PTA. The statute simply does not authorize the PTO to reduce the applicant's PTA by any "time consumed by" the RCE, whether filed before or after the 3-year deadline.

In fact, Congress expressly defined the circumstances that warrant reduction of an applicant's PTA elsewhere in the statute.   *Chevron v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-83 (1984) (where "Congress has directly spoken to the precise question at issue[,]" Congress' unambiguously expressed intent" must be given effect by the agency and the court).   Specifically, § 154(b)(2)(C) provides that PTA "shall be reduced by a period of time equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution of the application."   35 U.S.C. § 154(b)(2)(C).   This is known as Applicant Delay.   Importantly, the PTO's own regulations do not include an RCE as an example of Applicant Delay.   37 C.F.R. § 1.704(c)(1)-(11).   Moreover, the

PTO admits that it does not consider an RCE to be "Applicant Delay" under 154(b)(2)(C). Instead, the PTO claims that § 154(b)(1)(B), not § 154(b)(2)(C), authorizes the PTO to reduce an applicant's PTA based on an RCE.[3]

Notwithstanding the PTO's recognition that RCEs are *not* Applicant Delay, the PTO effectively treats RCEs as Applicant Delay. Worse, the PTO compounds its error by treating the filing of an RCE as a particularly punitive type of Applicant Delay. Under the PTO's interpretation, the filing of an RCE eliminates *any* further accrual of B Delay. 37 C.F.R. § 1.703(b). In contrast, the statute does not provide that Applicant Delay will terminate any further accrual of B Delay; rather, the statute instructs that PTA is to be reduced only for a period of time "equal to" the time that the applicant "failed to engage in reasonable efforts to conclude prosecution." 35 U.S.C. § 154(b)(2)(C). An RCE is a valuable prosecution tool that often directly leads to the prompt conclusion of prosecution – in fact, Exelixis's RCEs were the very step that led to the prompt resolution of examination. Indeed, the PTO issued Notices of Allowance for the '436 and '622 patents just eight and sixteen days (respectively) after Exelixis filed the RCEs. A896; A573. In short, the PTO's harsh treatment of RCEs is illogical, arbitrary and capricious, and not authorized by the statute.

---

[3] For example, in its reply brief in *Exelixis* II, the PTO argued that "there is nothing inconsistent about the USPTO considering an RCE as a limitation on a PTA under § 154(b)(1)(B) but not Applicant delay under § 154(b)(2)(C)." PTO's Reply Br., *Exelixis II*, No. 12-574, Doc. 27 at p. 7.

The PTO does not argue that its interpretation is compelled by the statutory language – and it even concedes that Exelixis's interpretation is grammatically permissible. (PTO Opening Br., Doc. 22, at p. 19, 20). Instead, the PTO advances a number of policy arguments to justify its interpretation and claims that its interpretation is "consistent" with the statute and worthy of deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). (PTO Opening Br., Doc. 22, at p. 32). However, as discussed below, *Skidmore* deference only arises when the statutory language is ambiguous and, importantly, "[a]mbiguity is a creature not of definitional possibilities but of statutory context." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-133 (2000) (internal quotation marks omitted). After applying the traditional tools of statutory construction, it is clear that the statutory context, language, and purpose compel Exelixis's interpretation. The PTO cannot rely on "deference" to save its erroneous interpretation. *PhotoCure ASA v. Kappos*, 603 F.3d 1372, 1376 (Fed. Cir. 2010).

Nor can the PTO's flawed interpretation survive by arguments based on hypothetical scenarios involving manipulative patent applicants. (PTO Opening Br., Doc. 22, at p. 22-27). Rather than focusing on the statutory text, the PTO devotes a significant portion of its Opening Brief speculating about hypothetical patent applicants who will try to game the system by filing serial RCEs or who willfully delay filing their RCE until after the 3-year deadline.

22

The PTO's position incorrectly assumes that patent applicants generally want to draw out the patent examination process for as long as possible, when in fact patent applicants are generally motivated to have their patents issue sooner rather than later so that they can enforce them in the marketplace.  Indeed, in the pharmaceutical sector, most patents cover products that have finite marketable lifespans.

Importantly, in the present case, there is no suggestion that Exelixis engaged in any such misconduct.  Nevertheless, the PTO insinuates the possibility of misconduct by saying, "[u]nder Exelixis's interpretation, an applicant could file an overly broad application in the first instance, receive final rejections, and refine the claims only through successive RCEs.  The district court found that something similar happened in *Exelixis II*."  (PTO Opening Br., Doc. 22, at p. 25).  In fact, Exelixis did *not* file "successive RCEs" – Exelixis filed just one RCE during prosecution for the applications leading to the '622 and '436 patents and, in both instances, Exelixis's RCE led to the prompt conclusion of prosecution.

The file wrappers for both the '622 and the '436 patent demonstrate that Exelixis was acting to move prosecution toward the timely allowance of the claims, by interviewing the cases with the Examiner and then by filing RCEs soon after using the claim amendments Exelixis proposed during the interviews.  Upon filing the RCEs for both the '622 and '436 patents, Exelixis expressly noted "[t]he

claim amendments are made in the interest of *expediting prosecution*." A660; 892 (emphasis added). In both cases, no additional claim amendments were required and the cases were allowed just eight and sixteen days after the filing of the RCEs. A896; A573

Whatever concerns the PTO has regarding "submarine patent applicants" who purposely delay prosecution through meaningless amendments and repeated continuance requests, those concerns are not substantiated on the record before the Court. In any event, if the PTO's concerns prove to be a reality, the proper remedy is with Congress. What the PTO may *not* do is rewrite § 154(b)(1)(B) to address an inequity that it believes will result if the statute is enforced as it is written. *Wyeth v. Kappos*, 591 F.3d 1364, 1370 (Fed. Cir. 2010) (rejecting PTO's arguments based on a "hypothetical patentee" who may receive "some type of windfall adjustment" because "this court does not take upon itself the role of correcting all statutory inequities, even if it could.").

Thus, Exelixis respectfully requests this Court to affirm the district court in *Exelixis I* and reverse the district court in *Exelixis II* by finding that § 154(b)(1)(B) does not authorize the PTO to reduce Exelixis's PTA for the "time consumed by" an RCE, but rather instructs that "time consumed by continued examination" tolls the 3-year deadline guaranteed for patent application pendency.

Alternatively, and at a minimum, this Court should reverse the *Exelixis II* court's ruling with respect to Issue #2 and find that the PTO may not categorically count all time after an RCE is filed as "time consumed by continued examination," even those days on which no "continued examination" actually took place. After the PTO issued the Notices of Allowance for the '622 and '436 patents, no "continued examination" took place. The PTO, not Exelixis, is responsible for the substantial time that lapsed between the PTO's issuance of the Notice of Allowance and the PTO's issuance of the patent. In fact, this period of time exists in the issuance of *any* patent, regardless of whether or not an RCE was filed.

## **ARGUMENT**

### A.    STANDARD OF REVIEW

In *Exelixis I*, the district court granted summary judgment in favor of Exelixis on the first issue (and did not reach the second issue). In *Exelixis II*, the district court granted summary judgment in favor of the PTO on the first and second issues. This Court reviews a grant of summary judgment without deference. *Wyeth*, 591 F.3d at 1369 (citing *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1353 (Fed. Cir. 1998)). Here, the parties agree that no genuine issue exists as to any material fact. Indeed, both issues disputed by the parties are questions of statutory interpretation, which this Court can "independently determine without deference to the trial court's interpretation." *Wyeth*, 591 F.3d at

1369 (quoting *Glaxo Operations UK Limited v. Quigg,* 894 F.2d 392, 395 (Fed. Cir. 1990) (citing *Madison Galleries, Ltd. v. United States,* 870 F.2d 627, 629 (Fed. Cir. 1989)).  Thus, both issues before the Court are subject to *de novo* review.

## B.    THE PTO'S INTERPRETATION IS NOT ENTITLED TO DEFERENCE

According to the PTO, the issue is "whether this Court should uphold the PTO's longstanding practice of excluding any time consumed by an applicant's [RCE]…from the calculation of [PTA]…."  (PTO Opening Br., Doc. 22 at p. 2). Tellingly, the PTO's characterization of the issue attempts to focus the Court's attention on the PTO's "longstanding" statutory interpretation, rather than on the statute itself.  Likewise, the PTO's Opening Brief primarily advances policy arguments that it contends justify the wisdom of its interpretation.  However, the starting point – and, indeed, the focal point of this Court's analysis on appeal – should be the statute itself.  Indeed, "it is axiomatic that '[t]he starting point in every case involving the construction of a statute is the language itself." *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 (1975) (Powell, J., concurring)).

Indeed, the U.S. Supreme Court has articulated a two-step analysis for courts charged with reviewing an agency's construction of a statute.  "*First, always*, is the question whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as

26

the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43; *see also Wyeth*, 591 F.3d at 1369 ("As always, the starting point in every case involving construction of a statute is the language itself."). Only in the "rare case" where the "literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters[]" may the court depart from the strict language of the statute. *United States v. Ron Pair Enterprises*, 489 U.S. 235, 242 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)); *see also Wyeth*, 591 F.3d at 1371 ("only a 'most extraordinary showing of contrary intentions' by Congress justifies a departure from the plain language of a statute.") (quoting *Garcia v. United States*, 469 U.S. 70, 75 (1984)).

In determining whether a statute has left room for agency interpretation, the Court must first apply all the customary tools of statutory construction. "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and *must* be given effect." *Chevron*, 467 U.S. at 843 n.9 (emphasis added). This is because "[a]mbiguity is a creature not of definitional possibilities but of statutory context." *Brown & Williamson Tobacco Corp.*, 529 U.S. at 132-13 (internal quotation marks omitted). Accordingly, the Federal Circuit has refused to "consider deference to an agency interpretation" before first using all of the traditional tools of statutory construction, such as the statute's language, purpose, and context. *Candle Corp. v.*

27

*United States Int'l Trade Comm'n*, 374 F.3d 1087, 1093 (Fed. Cir. 2004).  Indeed, "[i]f the statute's text does not explicitly address the precise question, we do not at that point simply defer to the agency.  Our search for Congress's intent must be more thorough than that."  *Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998).

If, after applying these tools of statutory interpretation, Congress's intent remains unclear, "step two" of the analysis is triggered.  Indeed, "[i]f Congress has *explicitly left a gap for the agency to fill*, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.  Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."  *Chevron*, 467 U.S. at 844 (emphasis added).  This is commonly referred to as "*Chevron* deference."

In the present case, the PTO does not even argue that its interpretation is entitled to "*Chevron* deference."  This likely reflects the PTO's recognition that "Congress has not vested the Commissioner with any general substantive rulemaking power[,]" thus PTO regulations "cannot possibly have the 'force and effect of law'" and "the rule of controlling deference set forth in *Chevron* does not apply[.]" *Merck & Co., Inc. v. Kessler*, 80 F.3d 1543, 1550 (Fed. Cir. 1996).  Instead, the PTO claims that its regulation should be given deference under the significantly less deferential standard articulated in *Skidmore v. Swift & Co.*, 323

U.S. 134 (1944).  Under *Skidmore*, agency interpretations are "not controlling" but "constitute a body of experience and informed judgment to which courts and litigants may properly resort to guidance." *Id.* at 140.  The "weight of such a judgment…will depend upon…all those factors which give it power to persuade, if lacking power to control." *Id.*

The Federal Circuit has explained that while *Skidmore* "does not entail the same degree of deference to administrative decisionmaking as the *Chevron* standard, it nonetheless requires courts to give some deference to informal agency interpretations of ambiguous statutory dictates, with the degree of deference depending on the circumstances." *Cathedral Candle Co. v. United States ITC*, 400 F.3d 1352, 1365 (Fed. Cir. 2005).  Thus an agency's interpretation of an "ambiguous statutory dictate" should be afforded *Skidmore* deference when the agency has "conducted a careful analysis of the statutory issue, if the agency's position has been consistent and reflects agency-wide policy, and if the agency's position constitutes a reasonable conclusion as to the proper construction of the statute, even if we might not have adopted that construction without the benefit of the agency's analysis." *Id.* at 1366.

In the present case, the PTO's interpretation fails at *Chevron*'s step one and, therefore, the question of deference does not even come into play.  "Indeed, '[i]f the statutory text is not ambiguous enough to permit the construction that the

agency urges, that construction fails at *Chevron*'s 'step one[.]'" *Chevron*, 467 U.S. at 844. It is axiomatic that "neither *Chevron* nor *Skidmore* permits a court to defer to an incorrect agency interpretation." *PhotoCure ASA v. Kappos*, 603 F.3d 1372 (Fed. Cir. 2010). *See also Wyeth*, 591 F.3d at 1372 (rejecting PTO's argument that its interpretation is entitled to deference under either *Chevron* or *Skidmore*, explaining that "the language of the statute itself controls this case…[therefore] this court detects no reason to afford special deference to the PTO's interpretation.") (citations omitted).

Moreover, *Skidmore* deference cannot save the PTO's interpretation because the PTO's position does *not* "constitute[] a reasonable conclusion as to the proper construction of the statute[.]" *Cathedral Candle*, 400 F.3d at 1366.

## C. EXELIXIS IS ENTITLED TO PTA FOR EACH DAY AFTER THE 3-YEAR DEADLINE UNTIL THE PATENT ISSUED

### 1. The Statute's Clear and Unambiguous Language Supports Exelixis's Interpretation

The PTO calculated 85 days of B Delay for the '622 patent and 394 days of B Delay for the '436 patent, which represent the number of days that passed after the 3-year deadline until the day of Exelixis's RCE submission. Thus, while the PTO found that Exelixis was entitled to PTA for B Delay for every day after the 3-year deadline up until Exelixis filed its RCE, the PTO cut off any additional accrual of B Delay from that point forward. As explained below, the PTO's

interpretation cannot be reconciled with the statute. Thus, for each of Exelixis's patents, the PTO should have awarded PTA for the complete B Delay period – *i.e.*, for each day that passed after the 3-year deadline until the patents issued. For the '622 patent, this equals a total of 199 days of B Delay; for the '436 patent, it is a total of 552 days.

Section 154(b)(1)(B) is the only place in the statute that addresses "time consumed by continued examination[.]" Because this section is critical to the parties' dispute, it is copied in full below:

> **(B) Guarantee of no more than 3-year application pendency.— Subject to the limitations under paragraph (2),** if the issue of an original patent is delayed due to the failure of the United States Patent and Trademark Office to issue a patent within 3 years after the actual filing date of the application in the United States, **not including**—
>
> **(i) any time consumed by continued examination of the application** requested by the applicant under section 132(b);
>
> **(ii)** any time consumed by a proceeding under section 135(a), any time consumed by the imposition of an order under section 181, or any time consumed by appellate review by the Board of Patent Appeals and Interferences or by a Federal court; or
>
> **(iii)** any delay in the processing of the application by the United States Patent and Trademark Office requested by the applicant except as permitted by paragraph (3)(C),
>
> **the term of the patent shall be extended 1 day for each day after the end of that 3-year period until the patent is issued**.

35. U.S.C. 154(b)(1)(B)(i) (emphasis added).

31

The statute thus provides applicants with a "[g]uarantee of no more than 3-year application pendency," but "time consumed by continued examination" will not count towards this deadline. If, however, the 3-year deadline comes and goes and the PTO fails to issue a patent within that time period, the remedy (*i.e.*, PTA) is triggered. This clear statutory intent is also reflected in the legislative history. *See* 145 Cong. Rec. H11769, 11802 (Nov. 9, 1999) (Joint Explanatory Statement of the Committee of Conference included with the statement of Rep. Tauzin) ("Any periods of time…consumed in the continued examination of the application…shall not be considered delay by the USPTO and *shall not be counted for purposes of determining whether the patent issued within three years from the actual filing date*.") (emphasis added).

Contrary to the PTO's interpretation, this subsection of the statute is directed to a presumptive entitlement to PTA (if the PTO fails to meet the "guaranteed" deadline); it does not itself represent a *limitation* on PTA. This is clear from the words "subject to the limitations of paragraph (2)." This clear statutory language does not support the PTO's claim that limitations on PTA are also set forth in paragraph (1). The A Delay and C Delay sections use the same conditional language used in the B Delay section – *i.e.* "if" the statutory guarantee is not met, a remedy (PTA) is triggered. 35 U.S.C. § 154(b)(1)(A)-(C). All of these guarantees are "subject to the limitations of paragraph (2)." *Id.* Notably, however, the PTO does

not contend that either of the A Delay or C Delay sections independently set forth limitations on an applicant's PTA.  The PTO's anomalous treatment of the B Delay section on this issue further underscores the flaws in the PTO's interpretation.

Paragraph (2) is copied in full below:

**(2) Limitations.—**

    **(A)  In general.—** To the extent that periods of delay attributable to grounds specified in paragraph (1) overlap, the period of any adjustment granted under this subsection shall not exceed the actual number of days the issuance of the patent was delayed.

    **(B) Disclaimed term.—** No patent the term of which has been disclaimed beyond a specified date may be adjusted under this section beyond the expiration date specified in the disclaimer.

    **(C) Reduction of period of adjustment.—**

    **(i)**The period of adjustment of the term of a patent under paragraph (1) **<u>shall be reduced by a period equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution of the application</u>**.

    **(ii)**With respect to adjustments to patent term made under the authority of paragraph (1)(B), an applicant shall be deemed to have failed to engage in reasonable efforts to conclude processing or examination of an application for the cumulative total of any periods of time in excess of 3 months that are taken to respond to a notice from the Office making any rejection, objection, argument, or other request, measuring such 3-month period from the date the notice was given or mailed to the applicant.

    **(iii)**The Director shall prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application.

35 U.S.C. § 154(b)(2)(C)(i)-(iii).

As shown above, one of the "limitations of paragraph (2)" is a reduction of PTA provision, which instructs that an applicant's PTA "shall be reduced by a period equal to" the period of Applicant Delay.  35 U.S.C. § 154(b)(2)(C).  Thus Congress directly spoke to the circumstances that warrant reduction of PTA.  *Id.* Notwithstanding this clear statutory language and corresponding framework, in which "guarantees" to PTA are provided for in one section and "limitations" are laid out in the next, the PTO reads § 154(b)(1)(B) as *itself* providing a critical limitation on the applicant's PTA. The statute simply does not authorize the PTO to reduce an applicant's PTA for time consumed by an RCE (let alone for an RCE that was filed after the 3-year deadline).  35 U.S.C. § 154(b)(1)(B)(i).  Indeed, the PTO agrees that an RCE is not Applicant Delay.  37 C.F.R. § 1.704(a), (c)(1)-(11).

This is not a case where Congress has left a gap for the PTO to fill – rather, Congress has expressly described certain guarantees that are "subject to" certain limitations, expressly defined those limitations in paragraph (2) of the statute, and expressly stated that PTA is to be reduced for a period of time "equal to" Applicant Delay.  While Congress authorized the PTO to "prescribe regulations establishing the circumstances that constitute" Applicant Delay, Congress did not authorize the PTO to read limitations into other sections of the statute or reduce PTA for reasons that do not constitute Applicant Delay.  35 U.S.C. § 154(b)(2)(C)(iii).

The fact that the PTO does not consider an RCE to be Applicant Delay is consistent with its recognition that RCEs are a "valuable tool" in the prosecution process. *See, e.g.,* Director's Forum: A Blog from USPTO's Leadership, *available at* www.uspto.gov/blog/director/entry/rce_filings_the_facts.   The value of RCEs is readily apparent in the present case, as Exelixis's RCE submission was the very event that led to the prompt resolution of examination for both the '622 and '436 patents.  In connection with the '622 patent application, Exelixis filed the RCE on April 11, 2011 and the Notice of Allowance issued just sixteen days later.  A572-573.  Similarly, in connection with the application underlying the '436 patent, Exelixis filed the RCE on June 23, 2011 and the Notice of Allowance issued just eight days later.  A820-821.

Under the PTO's interpretation, an RCE – which can and, in the present cases, *did* – lead to the prompt conclusion of prosecution, has a more significant punitive impact than Applicant Delay.  Indeed, the statute instructs that PTA is to be reduced for the time period "equal to" the time period during which the applicant failed to engage in reasonable efforts to conclude prosecution, meaning that an applicant would accrue additional B Delay after the Applicant Delay ended.  35 U.S.C. § 154(b)(2)(C).  Under the PTO's interpretation, an RCE completely cuts off further accrual of B Delay.  37 C.F.R. § 1.703.

### 2. Both the *Exelixis I* and *Exelixis II* Courts Found that an RCE Filed within the 3-Year Deadline *Tolls* the Deadline

The court in *Exelixis I* agreed with Exelixis's reading of the statute, finding that the "plain language" of § 154(b)(1)(B) was "clear, unambiguous, and in accord with both the statute's structure and purpose." A11. The court explained that the "goal of this paragraph, as its title indicates, is a 'Guarantee of no more than 3-year application pendency.' It accomplishes this goal by (i) starting a three year clock on the date the application is filed, (ii) tolling the running of this clock if, with the three year period, any of three events occur, including an RCE filing, and (iii) adding a day for day PTA to the patent term for any delay in the issuance of the patent after the three year clock, less any tolling, runs out." A11. In other words, "the statute does not consider an applicant's submission of an RCE as 'applicant delay' that warrants reduction under 154(b)(2)(C); rather the statute simply treats the time devoted to an RCE as time that should not be counted against the PTO in the running of the three year clock." A12.

Importantly, however, even the *Exelixis II* court found that "the unambiguous text of 35 U.S.C. § 154(b)(1)(B) clearly provides that the filing of an RCE *tolls the guaranteed 3-year time period* in which the PTO is expected to resolve a patent application when the RCE is filed <u>before</u> the expiration of that 3-year period." A36-37 (italics added; underline in original). Thus, the *Exelixis II* court agreed with Exelixis's view that an RCE filed within the 3-year period *tolls*

36

*the 3-year deadline*. *Id.* The *Exelixis II* court further found that this subsection of the statute was silent with respect to RCEs filed *after* the 3-year deadline, but "decline[d] to find that the statute's silence as to RCEs filed after the three-year period expresses 'plain and unambiguous' congressional intent on the issue." A39.

With all due respect to the *Exelixis II* court, this is not an instance where silence equates with ambiguity. The reason that § 154(b)(1)(B) is "silent" with respect to RCEs filed *after* the 3-year deadline is because the section itself is directed to the "guarantee" that the PTO will issue a patent within 3 years. This section identifies certain events – one of which is an RCE – that *toll* the 3-year deadline. Once that deadline is missed, an entitlement to PTA is triggered, which is subject to the limitations of paragraph (2). Because § 154(b)(1)(B) deals with a "guaranteed" deadline and certain events that operate to toll that deadline, there is no reason that this section would address RCEs filed *after* the 3-year deadline.

Moreover, here, Congress's intent on the circumstances that warrant reduction of PTA is clearly spelled out in § 154(b)(2)(C), which instructs that PTA is to be reduced for a period of time "equal to" Applicant Delay. The *Exelixis I* court expressly considered § 154(b)(2)(C), explaining: "Significantly, § 154(b) does not treat an RCE filing as applicant delay; instead, applicant delay is treated

in § 154(b)(2)(C), which is captioned 'Reduction of period of adjustment' and does not refer to RCE's." A12. However, the *Exelixis II* court did not substantively address the implication of § 154(b)(2)(C) when read in the overall context of the statute, which includes § 154(b)(1)(B). Read alone, § 154(b)(1)(B) does not support the PTO's interpretation, and reading it together with § 154(b)(2)(C) further confirms that Congress only intended RCEs to toll the 3-year deadline if filed within 3 years of the filing date and did *not* broadly authorize the PTO to reduce an applicant's PTA any time an RCE was filed.

Thus, Exelixis respectfully contends that the court in *Exelixis I* correctly applied the traditional tools of statutory construction to ascertain Congressional intent, while the *Exelixis II* court was too quick to defer to the PTO's interpretation and emphasized policy arguments over the statutory language.

### 3.    The PTO's Defense of its Interpretation is Not Persuasive

As discussed above, the PTO's interpretation is contrary to the clear and unambiguous statutory language. Therefore, the PTO's arguments defending its interpretation are not persuasive.

For example, the PTO argues that § 154(b)(1)(B) is written to exclude "any" RCE time and "*any* delay" requested by the applicant. (PTO Opening Br., Doc. 22, p. 20-21). But this only begs the fundamental question: from *what* is this time to be excluded? The PTO says it is to be excluded from an applicant's

PTA; Exelixis contends that it is to be excluded from the calculation of the 3-year deadline. Thus, the word "any" simply does not lend support to the PTO's interpretation.

In addition, the PTO claims that Exelixis's interpretation is "in considerable tension with other provisions of Section 154(b)." (PTO Opening Br., Doc. 22, at p. 21). This is not true. For example, the PTO claims that "[u]nder Exelixis's interpretation of the statute, time for unsuccessful appeals – no matter how frivolous – would be included in the total amount of PTA under § 154(b)(1)(B)(ii), notwithstanding the fact that Congress specified in § 154(b)(1)(C)(iii) that PTA time should be given only for successful appeals. And if an appeal filed after three years were successful, 35 U.S.C. § 154(b)(1)(C)(iii) would duplicate § 154(b)(1)(B)(ii) and have no effect." (PTO Opening Br., Doc. 22, at p. 21).

In fact, Exelixis's reading of these two statutory subsections is straightforward and not conflicting. Under § 154(b)(1)(B)(ii), "any time consumed by appellate review" tolls the 3-year deadline that the PTO must meet, while section(b)(1)(C) guarantees that if an appeal is ultimately successful, the applicant will get PTA for that time. Section 154(b)(1)(B)(ii) treats "time consumed by appellate review" as an event that tolls the 3-year deadline; in other words, it does not address "time consumed by appellate review" that occurs after the 3-year deadline. Accordingly, there is no merit to the PTO's claim that Exelixis's

39

interpretation renders these two statutory subsections duplicative with respect to successful appeals after the 3-year deadline.  Finally, the PTO's claim that Exelixis's interpretation would provide PTA for "frivolous" appeals is without merit.  If an applicant engages in a truly "frivolous" appeal after the 3-year deadline, the PTO could potentially treat this as Applicant Delay and reduce the applicant's PTA accordingly. Needless to say, Exelixis's interpretation does not require the PTO to affirmatively award PTA for "frivolous" appeals.  Rather, the statute affirmatively awards PTA when the PTO fails to meet the 3-year patent application pendency guarantee – *that* is the delay that § 154(b)(1)(B) addresses.

Additionally, the PTO argues that, under Exelixis's interpretation, "35 U.S.C. § 154(b)(1)(B)(iii) would operate to give PTA time to applicants who specifically request delays in the processing of their applications if such requests were made after the three-year date."  (PTO Opening Br., Doc. 22, at p. 21-22).  In fact, § 154(b)(1)(B)(iii) simply provides that the 3-year deadline will be tolled by "any delay in the processing of the application…requested by the applicant."  If the PTO does not issue a patent within the 3-year deadline, an entitlement to PTA is triggered – but § 154(b)(2)(C) provides that PTA may be reduced by the time equal to Applicant Delay, *i.e.,* the time that the "applicant failed to engage in reasonable efforts to conclude prosecution of the application."  Thus, the different language used in § 154(b)(1)(B)(iii) and § 154(b)(2)(C) reflects the different purposes of the

two provisions. Section 154(b)(1)(B) is directed to a guarantee of 3-year application pendency and enumerates certain categories of time (reflected in subparagraphs (i) through (iii)) that will not be held against the PTO in terms of calculating whether the PTO meets the 3-year deadline. In contrast, § 154(b)(2)(C) contemplates the circumstances warranting reduction of PTA. This is reflected in their plain language, including the titles corresponding to these different statutory sections. *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("'the title of a statute and heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute."); *Reese v. United States*, 24 F.3d 228, 231 (Fed. Cir. 1994) (using the section title to aid in resolving a statutory ambiguity).

Finally, the PTO's argument that Exelixis's interpretation will lead to "absurd" results is without merit. (PTO Opening Br., Doc. 22, at p. 22-23). The PTO argues that Exelixis's interpretation "treat[s] the delay associated with an RCE as the applicant's responsibility when the RCE is filed before the three-year time limit, but the USPTO's responsibility when the RCE is filed after that date." (PTO Opening Br., Doc. 22, at p. 23). In fact, under § 154(b)(1)(B), if an RCE is filed within 3 years of the filing date, the time consumed by it will not count towards the 3-year deadline that the PTO must meet. Once the 3-year deadline has

come and gone, the time that follows is attributable to the PTO as B Delay. It is the PTO's failure to meet the 3-year deadline that triggers an entitlement to PTA under § 154(b)(1)(B). Thus, the PTO incorrectly suggests that Exelixis views an RCE as the "applicant's responsibility" before the 3-year time deadline and the "USPTO's responsibility" thereafter. In fact, it is the PTO's responsibility to meet the 3-year deadline. That responsibility is not absolute – Congress has given the PTO some flexibility in meeting the deadline by carving out certain time periods that will toll the deadline. But once that deadline has not been met, an applicant's entitlement to PTA is triggered, subject to the limitations set forth in paragraph (2).

The PTO argues that Exelixis's interpretation of the statute would result in a "categorical disparity between RCEs filed before the three-year deadline and RCEs filed after that date[.]" (PTO Opening Br., Doc. 22, at p. 19). However, as discussed above, it is not as if the statute affirmatively grants PTA for an RCE filed after the 3-year deadline and affirmatively denies PTA for an RCE filed before. Rather, any "disparity" in an applicant's PTA relates to whether or not the PTO has met the 3-year guaranteed deadline. Indeed, the statute creates a 3-year deadline and the PTO's failure to meet that deadline triggers an entitlement to PTA. Under § 154(b)(1)(B), if an RCE is filed within 3 years of the application filing date, the "time consumed by continued examination" will not

be included towards the calculation of the 3-year deadline, which as a practical matter means that an applicant will not receive PTA for such time. However, once that deadline has been missed, there is nothing in the statute that suggests an RCE should result in reduction of PTA. Thus, the various statutory subsections apply consistently to all applicants. How any particular applicant is impacted by the application of these subsections will depend on the unique circumstances of that applicant's case.

Thus, any "disparity" reflects the nature of a clear and unambiguous statutory deadline. As courts have continually recognized, deadlines "are inherently arbitrary" but "are often essential to accomplish necessary results." *See, e.g.*, *United States v. Locke*, 471 U.S. 84, 94, 105 S. Ct. 1785, 1792 (1985) (quotation omitted); *Mathews v. Diaz*, 426 U.S. 67, 83-84, 96 S. Ct. 1883, 1893 (1976). Indeed, filing deadlines "inevitably require[] that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line." *U.S. R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179, 101 S. Ct. 453, 461 (1980) (quotation omitted). "[T]he fact that the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." *Id.* Thus, the PTO's hypothetical scenarios do nothing more than illustrate the nature of a clear statutory deadline. As the file histories for both of Exelixis's patent makes clear, Exelixis did not engage in any of the dilatory

43

tactics imagined by the PTO.  Insofar as the PTO's concerns regarding patent applicants who abuse RCEs come to pass, the proper remedy lies with Congress.[4] What the PTO may not do is rewrite the statute to render the deadline meaningless.

Accordingly, this Court should set aside the PTO's calculation of Exelixis's patent term as "not in accordance with the law" and "in excess of [its] statutory…authority."  5 U.S.C. § 706(2)(A) and (C); *see also Wyeth*, 591 F.3d at 1372 (striking the PTO's interpretation of section 35 U.S.C. § 154(b)(2)(A) when the statutory language is "clear, unambiguous, and intolerant of the PTO's suggested interpretation.").  The Court also should order the PTO to award Exelixis its rightful term of B Delay for both of the patents at issue.  For the '622 patent, the B Delay period should be 199 days instead of the 85 days calculated by the PTO.  For the '436 patent, the B Delay period should be 554 days instead of 394 days.  The proper calculations of B Delay for the '622 and '436 patents are shown in Figures 1 and 2, below:

---

[4] The PTO's concerns that applicants will use RCEs in a manipulative fashion do not appear to be supported by the data.  As discussed above, the PTO's own statistics show that a single RCE is filed during the prosecution of less than 20% of applications.  Moreover, only 5% of applications include two RCEs and an even smaller percentage of applications involve more than two RCEs.



FIGURE 1: Exelixis's Calculation of 199 Days of "B Delay" for the '662 Patent



FIGURE 2: Exelixis's Calculation of 554 Days of "B Delay" for the '436 Patent

## D.    ALTERNATIVELY, EXELIXIS SHOULD BE AWARDED PTA FOR THE PTO'S DELAY BETWEEN THE NOTICE OF ALLOWANCE AND PATENT ISSUANCE

In addition to improperly reducing Exelixis's PTA for "time consumed by" an RCE, the PTO compounds its error by folding in time that was not actually consumed by continued examination. Indeed, the PTO's regulation categorically treats all days after the RCE filing until patent issuance as "time consumed by continued examination." 37 C.F.R. § 1.703(b). This means that the PTO counts all time that passes between PTO's issuance of the Notice of Allowance and its issuance of the patent as "time consumed by continued examination" – even

45

though the Notice of Allowance signifies the end of examination and, barring unusual circumstance not present here, no continued examination occurs after that point until the patent issues.[5]

Thus, even if this Court disagrees with Exelixis and defers to the PTO's view that it may reduce PTA for "time consumed by continued examination," it should not defer to the PTO's decision to automatically treat *all* time after an RCE filing as "time consumed by continued examination." Congress used the words "time consumed by continued examination," but the PTO has effectively rewritten those words to mean "any day following an RCE filing" – regardless of what is actually occurring on those days and which party controls how many days pass. 37 C.F.R. § 1.703(b). This is improper.

The Notices of Allowance signified the end of prosecution for both the '622 and '436 patents. No additional "examination" took place after the issuance of the Notices of Allowance until the day that each of those patents issued. Accordingly, the PTO erred by reducing Exelixis's PTA for time consumed by its own administrative delay.

Indeed, a Notice of Allowance is mailed only after the PTO has fully examined the patent application and determined that "the applicant is entitled to a

---

[5] The *Exelixis I* did not reach this issue because it ruled in favor of Exelixis on the first issue. The *Exelixis II* court deferred to the PTO's interpretation and thus ruled against Exelixis on this issue. Exelixis respectfully contends that the *Exelixis II* court's analysis was unduly deferential to the PTO.

patent under the law." *See* 35 U.S.C. § 151; Manual of Patent Examining Procedure, Chapter 700, "Examination of Applications" (8th ed., Rev. 8, July 2010); Department of Commerce, Patent and Trademark Office, Changes to Patent Practice and Procedure, 62 Fed. Reg. 53,132,53,144-45 (Oct. 10, 1997) ("[u]pon mailing of a notice of allowance…, prosecution of an application…is concluded."). Consistent with this, the Notices of Allowance that the PTO issued for the '622 and '436 patents expressly state: "THE APPLICATION IDENTIFIED ABOVE <u>HAS BEEN EXAMINED</u> AND IS ALLOWED FOR ISSUANCE OF A PATENT. <u>PROSECUTION ON THE MERITS HAS CLOSED</u>."  A666; A896 (underline added).  The past tense language used in the Notices – "the application…*has been examined*" – leaves no doubt that the PTO's examination had concluded at the time the Notices were issued, *i.e.*, the "prosecution on the merits *has closed*."

In view of this, the PTO's briefing in both of the district court cases conceded that no "continued prosecution" took place after the Notices of Allowance, but insisted that *examination* continued after the Notices of Allowance issued until each of the patents issued.[6]  The PTO thus manufactured an artificial distinction between "prosecution" and "examination" in a futile attempt to justify its erroneous interpretation.

_____

[6] For example, the PTO argued, "'Examination should not be confused with 'prosecution' of the patent application." *Exelixis I*, Doc. 21, p. 23, n.20; *Exelixis II*, Doc. 18, p. 24, n. 21.

As a preliminary matter, the statute clearly uses the terms "prosecution" and "examination" interchangeably. Section 154(b)(1)(C) says that PTA "shall be reduced" for time during which the "applicant failed to engage in reasonable efforts *to conclude prosecution* of the application." 35 U.S.C. § 154(b)(1)(C)(i) (emphasis added). In the very next paragraph, the statute describes a particular situation in which "an applicant shall be deemed to have failed to engage in reasonable efforts to conclude *processing or examination* of an application" – thus clearly using "processing or examination" synonymously with "prosecution." 35 U.S.C. § 154(b)(1)(C)(ii) (emphasis added). The next paragraph again refers to "processing or examination" as synonymous with "prosecution," instructing: "The Director shall prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude *processing or examination* of an application." 35 U.S.C. § 154(b)(1)(C)(iii) (emphasis added).[7]

The PTO's contrived distinction between "examination" and "prosecution" fares no better in view of its own regulations, which – like the statute – use the terms interchangeably. Indeed, 37 C.F.R. § 1.704(a) explains:

---

[7] The *Exelixis II* court says that the "applicable statute does not address the issue" of whether Exelixis is entitled to B Delay PTA for time between the PTO's issuance of the Notice of Allowance and its issuance of the patent. A47. However, the *Exelixis II* court's opinion does not address, *inter alia*, the fact that the statute equates "prosecution" with "examination or processing." A24-27.

> The period of adjustment of the term of a patent under § 1.703(a) through (e) shall be reduced by a period equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude *prosecution (processing or examination)* of the application.

37 C.F.R. § 1.704(a) (emphasis added).

Definitively confirming that there is no difference between "prosecution" and "examination," the PTO responded to comments on these regulations that "prosecution" in 35 U.S.C. § 154(b)(2)(C)(i) "means the same thing" as "processing or examination" in 35 U.S.C. § 154(b)(2)(C)(ii)-(iii), and thus "[§] 1.704(a) uses the term 'prosecution (processing or examination)' for this reason." *See* 65 Fed. Reg. 56,366, 56,377. Having previously concluded that "examination" and "prosecution" are "the same thing," the PTO cannot now argue that they are different. *See Godwin v. United States*, 338 F.3d 1374, 1379 (Fed. Cir. 2003) (rejecting government's interpretation as inconsistent with another regulation). Depriving Exelixis of PTA on this artificial distinction is the epitome of arbitrary and capricious agency action.

The PTO's categorical treatment of *all* time after the filing of an RCE as "time consumed by continued examination" is also inconsistent with the purpose of the PTA provisions of the Patent Statute, which is to compensate patentees for patent term lost to "delays caused by the USPTO that were beyond the control of the applicant" and to "compensate applicants fully for USPTO-caused administrative delays." H.R. Rep. No. 106-464, at 125 (Nov. 9, 1999) (Conf.

49

Rep.).  The PTO – not Exelixis – controlled the time that it took the PTO to issue the '622 and '436 patents after it issued the Notices of Allowance.  Exelixis's PTA should not be reduced by delays that it did not cause.

Moreover, and critically, *every* issued patent has a time period between the mailing date the Notice of Allowance and the date the patent issues.  This time period is generally included in the calculation of PTA for B Delay (assuming, of course, the patent did not issue within the 3-year period "guaranteed" by statute).  There is no legitimate basis to deprive Exelixis of that time period simply because it utilized a RCE after the PTO had already failed to meet its 3-year deadline.  In other words, there is no legitimate basis for the PTO's position that filing an RCE after the 3-year deadline halts all further calculation of B Delay.  Importantly, as discussed above, even Applicant Delay warrants reduction of PTA only for a period of time "equal to" that delay.  35 U.S.C. § 154(b)(2)(C).  It is arbitrary and capricious to treat an RCE – which is *not* Applicant Delay – in a more punitive manner than Applicant Delay, *i.e.* by reducing Exelixis's PTA for a time that is not merely equal to, but *greater than* the time actually "consumed by continued examination."

Finally, the PTO's regulations construe the phrase "time consumed by" inconsistently in different subsections of § 154(b)(1)(B) of the statute.  Specifically, subsection (ii) of § 154(b)(1)(B) excludes "time consumed by appellate review" from the guaranteed 3-year patent application pendency.  The PTO calculates the "time consumed by appellate review" to run from the Notice of Appeal to the mailing of

the Notice of Allowance.  37 C.F.R. § 1.703(b)(4).  Yet for "time consumed by continued examination" under subsection (i) of § 154(b)(1)(B), it calculates this period from the submission of the RCE to the issuance of the patent, rather than the mailing of the Notice of Allowance.  37 C.F.R. § 1.703(b)(1).  This differing treatment of the "time consumed" language in two subsections of the same statutory provision makes no sense, is arbitrary and capricious, and renders the PTO's regulations unlawful.  "A long line of precedent has established that an agency action is arbitrary and capricious when the agency offer[s] insufficient reasons for treating similar situations differently."  *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996); *Nat'l Org. of Veterans' Advocates v. Sec'y of Veterans Affairs*, 314 F.3d 1372, 1377 (Fed. Cir. 2003).

Therefore, at a minimum, Exelixis is entitled to 183 days of B Delay for the '622 patent, which represents the 85 days after the 3-year deadline until Exelixis filed the RCE (which the PTO awarded), *plus* the additional 98 days that it took the PTO to issue the '622 patent after issuing the Notice of Allowance.  For the '436 patent, Exelixis is at least entitled to 546 days of B Delay, which represents the 394 days after the 3-year deadline until Exelixis filed the RCE (which the PTO awarded), *plus* the additional 152 days of PTO delay after the Notice of Allowance issued.  The alternative calculations of B Delay for the '622 and '436 patents are shown in Figures 3 and 4, below:



FIGURE 3: Exelixis's Alternative Calculation of 183 Days of "B Delay" for the '622 Patent



FIGURE 4: Exelixis's Alternative Calculation of 546 Days of "B Delay" for the '436 Patent

## CONCLUSION

For the foregoing reasons, Exelixis respectfully asks the Court to affirm the judgment of the *Exelixis I* court and reverse the judgment of the *Exelixis II* court. In particular, Exelixis asks the Court to find that § 154(b)(1)(B) only provides that an RCE filed within 3 years of the application filing date tolls the 3-year deadline guaranteed by that section, and does not authorize the PTO to reduce Exelixis's PTA for "time consumed by continued examination" anytime an RCE is filed. In addition, Exelixis asks the Court to find that the PTO erred by categorically treating all time after an RCE is filed as "time consumed by continued examination," even the PTO delay that occurs after the Notice of Allowance issues.

As a result of the PTO's two errors of statutory interpretation, the PTO improperly reduced the proper PTA to be awarded to Exelixis's '622 patents. Accordingly, Exelixis asks the Court to find that the proper B Delay PTA for the '622 patent is 199 days, rather than the 85 days awarded by the PTO. For the '436 patent, Exelixis asks the Court to find that the proper B Delay PTA is 554 days, rather than the 394 days awarded by the PTO. Alternatively, if the Court defers to the PTO on Issue #1 but rules in favor of Exelixis on Issue #2, Exelixis asks the Court to award 183 days of B Delay PTA for the '622 patent and 546 days for the '436 patent.

Respectfully submitted,

*s/J. Michael Huget*

TIMOTHY C. BICKHAM                    J. MICHAEL HUGET
HOUDA MORAD                           DEBORAH J. SWEDLOW
STEPTOE & JOHNSON LLP                 EMILY J. (ZELENOCK) TAIT
1330 Connecticut Avenue, NW           HONIGMAN MILLER SCHWARTZ
Washington, D.C. 20036                AND COHN LLP
(202) 429-3000                        130 S. First Street, 4th Floor
                                      Ann Arbor, MI 48104
                                      (734) 418-4200

May 20, 2013                          *Counsel for Exelixis, Inc.*[8]

---

[8] Exelixis notes that the applications of its counsel Jonathan P. O'Brien, Heidi M. Berven, and Noel E. Day for admission to practice before the Federal Circuit were approved on May 20, 2013, the day that this brief was filed. Exelixis intends to file notices of appearance for these three individuals to reflect their representation of Exelixis in this matter.

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that, on this the 20th day of May, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered users:

Dana Kaersvang
DEPARTMENT OF JUSTICE
COMMERCIAL LITIGATION BRANCH
CIVIL DIVISION
P.O. Box 480
Ben Franklin Station
Washington, DC  20044

Nathan K. Kelley
Monica B. Lateef
Brian T. Racilla
UNITED STATES PATENT
  AND TRADEMARK OFFICE
OFFICE OF THE SOLICITOR
P.O. Box 1450
Mail Stop 8
Alexandria, VA  22213-1450

*Counsel for Appellant/Cross-Appellee*

*Counsel for Appellant/Cross-Appellee*

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

*s/ Melissa A. Dockery*
Melissa A. Dockery
GIBSON MOORE APPELLATE SERVICES
421 East Franklin Street, Suite 230
Richmond, VA  23219

## <u>CERTIFICATE OF COMPLIANCE</u>
### With Type-Volume Limitation, Typeface Requirements, And Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains <u>12,462</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 Times New Roman</u>.

May 20, 2013                                    <u>*s/J. Michael Huget*</u>
                                                  J. Michael Huget